**FILED**

OCT 2 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

United States District Court
District of Columbia

In re: The Lorice T. Wallace Revocable     )
Trust dated December 26th, 1974, as         )
restated effective October 5th 1993          )
and as amended on February 12th, 1998,    )
the Lorice T. Wallace Irrevocable Trust     )
dated February 8th, 1996, and the Lorice   )
T. Wallace Irrevocable Trust date             )
September 11th, 1992, also known as the   :
Lorice T. Wallace Life Insurance Trust.      )
                                                            )
Vs.                                                        )
                                                            )
Stephen P. Wallace, et al. 6528 E. 101st D, #304 Tulsa Ok 74133
                                                            )         (918) 694 1870
                                                            )
        respondents,                                 )
                                                            )
vs.                                                        )

1)  James C. Milton, 320 S. Boston, #500, Tulsa, Ok 74103, (918)582-1211
2)  James E. Poe, 111 W. 5th #740, Tulsa, Ok. 74103, (918)585-5537
3)  Ronald J. Saffa, 3501 S. Yale, Tulsa, Ok, 74135, (918)664-0800, (918)
4)  Gregory K. Frizzell, 500 S. Denver, Room #706 Tulsa, Ok. 74103 (918)596 5000
5)  James M. Inhofe, 1924 S. Utica #530, Tulsa, Ok. 74104, (918)748-5111
6)  Jack Kirkpatrick, 320 S. Boulder, Tulsa, Ok. 74103, (918)587-6621
       and                                               )
7)  Guaranty Abstract, a corporation      )
       domestic to the state of                 )
       Oklahoma, 320 S. Boulder ) Tulsa, Ok. 74103 (918) 587-6621
8) Trust Company of Oklahoma), its Shareholders & Directors @
       defendants on cross-claim.          ) Two Warren Place, 6120 S. Yale #1900
                                                         ) Tulsa, Ok. 74136'

<u>Respondent, Stephen P. Wallace's notice of removal and complaint</u> for forensic audit (qui)

CASE NUMBER 1:06CV01817

JUDGE: Reggie B. Walton

DECK TYPE: Civil Rights (non-employment)

DATE STAMP: 10/23/2006

Stephen P. Wallace files this notice of removal under authority of 28 U.S.C. §1441(b) –
the courts of Oklahoma, as a matter of custom and policy, refuse meaningful access to the
courts of Oklahoma including federal courts based on bias which includes racial basis.
Parties similarly situated to Stephen P. Wallace are not able to vindicate their rights under
the Constitution including due process of law and equal protection of the laws due to
Oklahoma's customs and policies that parties similarly situated to Stephen P. Wallace
have no rights which parties such as James C. Milton, James E. Poe, Ronald J. Saffa,
Gregory K. Frizzell, James M. Inhofe, and Jack Kirkpatrick are obliged to respect.

Trust Co. of Oklahoma

1

The matter of the The Lorice T. Wallace Revocable Trust dated December 26th, 1974 et al. involves "federal questions" occurring, *inter alia* at 42 USC Sec. 1983 and 18 U.S.C. Sec. 1964(a)&(c).

## A. Introduction

1. Plaintiff is a "devils brew" of entities with the foundation entity being the Lorice T. Wallace Revocable Trust dated December 26th, 1974. A jury shall determine that the other entities occurring in the style of this instant case are a series of subterfuges which resulted in usurpation and adverse domination of the foundation document established to conserve and distribute approximately thirty million dollars ($30,000,000.00) to Stephen P. Wallace and Stephen P. Wallace's three siblings.

2. About June 30th of 2006 Messrs James C. Milton, James E. Poe, and Ronald J. Saffa, petitioned Gregory K. Frizzell, out-of-court, to exclude Stephen P. Wallace and Mary Roma Jage as beneficiaries of the Lorice T. Wallace Revocable Trust dated December 26th, 1974. A jury shall determine that with Stephen P. Wallace and Mary Roma Jage "out of the picture", Messrs Milton, Poe, and Saffa would complete the liquidation of the Lorice T. Wallace Revocable Trust dated December 26th, 1974 without ever providing Stephen P. Wallace or his siblings with an accounting of the liquidation of approximately thirty million dollars and without payment of "one red cent" to Stephen Paul Wallace. A jury shall determine that several million dollars found its way into the pockets of Milton, Poe, and Saffa as if the Lorice T. Wallace Revocable Trust dated December 26th, 1974 was their personal retirement plan. A jury shall also determine that James M. Inhofe and Jack Kirkpatrick, doing business as Guaranty Abstract, are facilitators to parties including Gregory Frizzell, James Milton, James Poe, and Ronald Saffa and many of similar ilk to Frizzell, Milton, Poe, and Saffa in secretly embezzling

large sums of money from estates such as the Lorice T. Wallace Revocable Trust dated December 26th, 1974.

3. All of the  actions occurred on land and do not involve maritime or admiralty claims.

4. This case became removable circa October 10th of 2006 when Gregory Frizzell and Joseph Watt, the Chief Justice of the Oklahoma Supreme Court, openly confessed to the existence of a summary law system in Oklahoma established for the specific purpose of replacing the United States Constitution with a system of customs, policies, and privileges which excludes parties similarly situated to Stephen P. Wallace.

### B. Basis for Removal

5. Removal is proper because plaintiffs' suit involves federal questions and due to the established fact that Oklahoma Courts routinely deprive select Oklahoma citizens of due process of law and equal protection of the laws based on factors including race and national origin.

6. It is unknown whether there are other defendants in this instant case due to the fact that the proceedings have been in contravention of the Constitution's mandate for due process, a laughing matter to Gregory K. Frizzell.

7.  The pending pleadings, process, orders, and other filings in the state court action are attached to this notice.

8.  Stephen P. Wallace will promptly  file a copy of this notice of removal with the clerk of the state court in the County of Tulsa, Oklahoma, where quasi-criminal proceedings are pending.

Related cases

9.  District of Columbia, Civil Action Number 06-402 RBW and District of Columbia, Civil Action Number 06-1264.

C. Jury Demand

10. Should this action require a trial, Stephen P. Wallace asserts his right to a trial by jury.

D. Conclusion

11. With the above premises considered, Stephen P. Wallace seeks to have this action heard before the U.S. District Court for the District of Columbia so federal questions are properly addressed and Stephen P. Wallace's rights are protected.

Cross-claims

42 U.S.C. § 1983: Gregory Frizzell, James Milton, James Poe, and Ronald Saffa conspired under color of law to deprive Stephen P. Wallace of property without due process of law. Gregory Frizzell, James Milton, James Poe, and Ronald Saffa have subjected Stephen P. Wallace to sham legal process where the Constitution's mandates for equal protection of the laws and due process have been circumvented. Gregory Frizzell, James Milton, James Poe, and Ronald Saffa have, without ever composing a court of competent jurisdiction, deprived Stephen P. Wallace of an undetermined sum of money which may exceed seven million dollars based solely on the out of court fraudulent representations of James Milton, James Poe, and Ronald Saffa.

18 U.S.C. § 1964(a) & (c): James Milton, James Poe, and Ronald Saffa are an association in fact affecting interstate commerce. James Milton, James Poe, and Ronald Saffa are engaged in a series of fraud schemes which are ongoing including use of the United States Postal Service. The frauds perpetrated by James Milton, James Poe, and Ronald Saffa have resulted in damages to the business and property interests of Stephen P.

4

Trust G. n Oklahoma Cor-

Wallace.  The frauds perpetrated by James Milton, James Poe, and Ronald Saffa were facilitated by Gregory Frizzell.  James M. Inhofe and Jack Kirkpatrick, doing business as Guarantee Abstract, were also indispensable in advancing the fraud scheme of James Milton, James Poe, and Ronald Saffa.  The fraud schemes of James Milton, James Poe, and Ronald Saffa are likely to continue unless abated by this court.

Dated this 22nd, day of October, 2006

_Stephen P. Wallace_ ✓

Stephen P. Wallace
6528 E. 101st D-304
Tulsa, Oklahoma 74133
(918) 694-1870

MARY-ELIZABETH PAGE
Notary Public - State of Oklahoma
Oklahoma County
Commission # 06007116
My Commission Expires Jul 24, 2010

Mary-Elizabeth Page
10/22/06

06-1817

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

JAB

**I. (a) PLAINTIFFS**

Stephen P. Wallace, et al
similarly situated

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

Tulsa, Ok.

**(c)** ~~ATTORNEYS~~ (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Stephen P Wallace
6528 E. 101st D-1 #304
Tulsa Ok. 74133

**DEFENDANTS** James Milton, et al
Tulsa

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)

CASE NUMBER   1:06CV01817

JUDGE: Reggie B. Walton

DECK TYPE: Civil Rights (non-employment

DATE STAMP: 10/23/2006

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

**III CITIZE...**
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)  FOR DIVERSITY CASES O...

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

| ☐ A. *Antitrust* | ☐ B. *Personal Injury/ Malpractice* | ☐ C. *Administrative Agency Review* | ☐ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br><br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

---

☐ E. *General Civil (Other)* OR ☐ F. *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ G.  *Habeas Corpus/ 2255* | ☐ H.  *Employment Discrimination* | ☐ I.  *FOIA/PRIVACY ACT* | ☐ J.  *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ K.  *Labor/ERISA (non-employment)* | ☐ L.  *Other Civil Rights (non-employment)* | ☐ M.  *Contract* | ☐ N.  *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

✓ 28 USC 1441 (b) for oppression and anti-semetic actions

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   **DEMAND $** to be determined   Check YES only if demanded in complaint **JURY DEMAND** ☒ YES   ☐ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   ☐ YES   ☒ NO   If yes, please complete related case form.

DATE 10/23/06   SIGNATURE OF ATTORNEY OF RECORD   *Pro Se*   Stephen P. Wallace

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed _only_ if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the _primary_ cause of action found in your complaint. You may select only _one_ category. You _must_ also select _one_ corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA

In re: the Lorice T. Wallace Revocable     )
Trust dated December 26, 1974, as restated )
effective October 5, 1993 and as amended   )
on February 12, 1998, the Lorice T.        )
Wallace Irrevocable Trust dated February   )     PT-2002-56
8, 1996, and the Lorice T. Wallace         )
Irrevocable Trust dated September 11,      )     Hon. Gregory K. Frizzell
1992, also known as the Lorice T. Wallace  )
Life Insurance Trust, and the Lisa Frances )
Wallace Discretionary Spendthrift Trust.   )

**APPLICATION FOR INSTRUCTIONS, AND BRIEF IN SUPPORT,
REGARDING CONDUCT IN APPARENT VIOLATION OF THE NO-CONTEST
PROVISIONS OF THE LORICE T. WALLACE REVOCABLE TRUST
AND THE LORICE T. WALLACE IRREVOCABLE TRUST**

Respectfully submitted,

James C. Milton, OBA No. 16697
Elizabeth W. Carroll, OBA No. 20646
DOERNER, SAUNDERS, DANIEL & ANDERSON, L.L.P.
320 South Boston Ave., Ste. 500
Tulsa, Oklahoma 74103-3725
918-582-1211; fax 918-591-5362
ATTORNEYS FOR PETITIONER,
THE TRUST COMPANY OF OKLAHOMA

Joined by:     James E. Poe, OBA No. 7198
COVINGTON & POE
111 West 5th Street, Ste. 740
Tulsa, Oklahoma 74103
918-585-5537; fax 585-5530
ATTORNEY FOR PETITIONER,
RONALD J. SAFFA

June 30, 2006



## TABLE OF CONTENTS

Introduction..................................................................................................................................1

Factual Statement........................................................................................................................1

    A.   Background. ...................................................................................................................1

    B.   Conduct by Stephen Paul Wallace and Mary Roma Jage in apparent violation
         of the no-contest provisions of the Trusts.......................................................................2

Argument and Support................................................................................................................10

Conclusion .................................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

State Cases

*Estate of Kubick v. Pacific Nat'l Bank of Washington*, 513 P.2d 76 (Wash. Ct. App. 1973) ........13

*Estate of Massey*, 1998 OK CIV APP 116, 964 P.2d 238 .........................................................11

*Estate of Mumby*, 982 P.2d 1219 (Wash. Ct. App. 1999)..........................................................13

*Estate of Peppler*, 971 P.2d 694 (Colo. Ct. App. 1998) ............................................................13

*Estate of Shumway*, 9 P.3d 1062 (Ariz. 2000) .........................................................................13

*Estate of Westfahl*, 1983 OK 119, 674 P.2d 21 ...........................................................11, 12, 13

*Farr vs. Whitefield*, 33 N.W.2d 791 (Mich. 1948) ....................................................................14

*Hannam v. Brown*, 956 P.2d 794 (Nev. 1998)...........................................................................11

*Hulett v. First Nat'l Bank & Trust Co.*, 1998 OK 21, 956 P.2d 879..........................................11

*In re Estate of Bank*, 699 N.E.2d 1103 (Ill. App. Ct. 1998) .....................................................15

*Pirkey v. State ex rel, Martin*, 1958 OK 153, 327 P.2d 463 ......................................................14

Other Authorities

Annotation, Validity and Enforceability of Provision of Will or Trust Instrument for
   Forfeiture or Reduction of Share of Contesting Beneficiary, 23 A.L.R.4th 369 ...............14

**APPLICATION FOR INSTRUCTIONS, AND BRIEF IN SUPPORT,
REGARDING CONDUCT IN APPARENT VIOLATION OF THE NO-CONTEST
PROVISIONS OF THE LORICE T. WALLACE REVOCABLE TRUST
AND THE LORICE T. WALLACE IRREVOCABLE TRUST**

The Petitioners, The Trust Company of Oklahoma ("Trust Company") and Ronald J.

Saffa, respectfully submit this Application for Instructions, and Brief in Support, Regarding the

No-Contest provisions of the Lorice T. Wallace Revocable Trust ("LTW Revocable Trust") and

the Lorice T. Wallace Irrevocable Trust ("LTW Irrevocable Trust") (collectively, "Trusts").

**INTRODUCTION**

The purpose of this Application for Instruction is to provide all parties with notice of the

basis for the request for instructions regarding potential violations of the no-contest provision of

the controlling instruments of the LTW Revocable Trust and the LTW Irrevocable Trust. More

specifically, it appears that conduct by Respondents Stephen Paul Wallace and Mary Roma

Wallace Jage has violated the no-contest provisions of the Trusts.

**FACTUAL STATEMENT**

**A.    Background.**

1.    Trust Company and Mr. Saffa are successor co-trustees of both the LTW

Revocable Trust and the LTW Irrevocable Trust.

2.    The beneficiaries of the LTW Revocable Trust and the LTW Irrevocable Trust are

Stephen P. Wallace ("Stephen"), Mary Roma Wallace Jage ("Roma"), and Patricia Wallace

Hastings.   Various contingencies currently attach to the beneficial interests held by these

beneficiaries.  Among them is a determination of whether certain of the beneficiaries (Stephen or

Roma, or both) have violated the no-contest provisions of the controlling instruments of these

two trusts.

3.    The primary controlling instrument of the LTW Revocable Trust states as

follows: "If any person shall, in any manner, directly or indirectly, contest the validity of this

1

Trust, or any part thereof, that person or persons shall take nothing from this Trust and distribution shall be made as though that person or persons did not exist." [Controlling instrument of LTW Revocable Trust, attached to 9/11/2002 Petition for Instructions (Case No. PT-2002-56) as Ex. "B", at p. 2 (TRUST 740), § 1.03(C).]

4.      The controlling instrument of the LTW Irrevocable Trust states as follows: "If any person shall, in any manner, directly or indirectly, contest the validity of this Trust, or any part thereof, or any of the provisions for distribution, that person or those persons shall receive no distribution from this Trust and distribution shall be made as though that person or persons did not exist." [Controlling instrument of LTW Irrevocable Trust, attached to 9/11/2002 Petition for Instructions (Case No. PT-2002-56) as Ex. "D", at p. 8 (TRUST 869), art. IX.]

**B.    Conduct by Stephen Paul Wallace and Mary Roma Jage in apparent violation of the no-contest provisions of the Trusts.**

5.      On August 8, 2003, in proceedings in this action, Mr. Wallace expressly challenged the provisions of the LTW Revocable Trust. Trust Company and Mr. Saffa had requested the Court's instructions regarding a provision requiring a distribution to Holy Angels School Charitable Endowment Fund, in the amount of $100,000.00. During the proceedings, the Court asked Mr. Wallace: "I take it you contest this provision for distribution; is that correct?" Mr. Wallace replied, "For the record, yes, your Honor." [Exhibit "1", 8/8/2003 Trans. (PT-2002-56), at p. 13, ll. 7-9.] Mr. Wallace later tried to clarify his statement, stating that he "wasn't objecting to the ultimate receiving of that trust . . . ." [*Id.* at p. 30, ll. 23-24.] The Court noted, though, that it had "just spent the last hour on this matter and it sure seemed to [the Court] that [Mr. Wallace was] contesting the distribution and, in fact, [Mr. Wallace] said on the record that [he] contested the distribution to Holy Angels school." [*Id.* at p. 31, ll. 6-9.]

6.      Mr. Wallace's blatant attacks against the controlling instruments of the LTW Revocable Trust and the LTW Irrevocable Trust began in 2002, shortly after the District Court of

Tulsa County ruled (at the conclusion of the February 2002 bench trial in Case No. PT-2000-21) that Mr. Wallace had not previously violated the no-contest provisions of the Trusts. On March 21, 2002, Mr. Wallace filed a Second Amended Complaint in federal court in Tulsa, Oklahoma, alleging that Mr. Saffa "secretly conspire[ed] to rewrite the Wallace Trusts and rename his choice as to the beneficiaries of said 1974 Trusts." [Exhibit "2", 3/21/2002 Second Amended Complaint (Case No. 2002-CV-148), at p. 11.] "In 1993 Saffa secretly prepared and fraudulently induced his aunt into signing a Restatement of her 1974 Trust which originally Frank had David Fist prepare to protect his family's wealth." [*Id.*] This allegation is an apparent reference to the October 5, 1993 restatement of the LTW Revocable Trust. The LTW Revocable Trust was originally formed in 1974.

7.     These allegations regarding the 1993 restatement of the LTW Revocable Trust appear repeatedly throughout documents filed or submittted by Mr. Wallace (and, in some instances, Ms. Jage) over the past five years. On July 1, 2002, Mr. Wallace filed a Response in five separate actions in the District Court of Tulsa County – Case No. PG-1999-556, Case No. CJ-2000-1684, Case No. PT-2000-21, Case No. PT-2000-44, and Case No. CJ-2000-1900. In the July 1, 2002 Response, Mr. Wallace alleged that "Lisa Wallace was fraudulently omitted from legal representation and the **preferred rights** she possesses in both the Frank A. and Lorice T. Wallace's Trusts of 1974, which Ronald Saffa and David Fist altered in a premeditated fraudulent conversion plan for the Wallace Family $30,000,000 Estate." [Exhibit "3", 7/1/2002 Response (Case No. PT-2000-21, et al.), at p. 4 (emphasis in original).]

8.     In August 2002, Mr. Wallace and Ms. Jage signed a "Wallace Family Declaration of Independence." The August 2002 document was also signed by Lorice T. Wallace, despite the pendency of a guardianship action regarding Mrs. Wallace. The document had a signature line for Respondent Patricia Wallace Hastings, but Ms. Hastings did not sign it. The August

2002 document stated "[t]hat Lorice T. Wallace and her (4) four children wish to **dissolve** and **distribute** any and all Trust assets and Family Limited Partnership assets evenly and immediately." [Exhibit "4", 8/2002 Wallace Family Declaration of Independence, ¶ 3 (emphasis in original).] The document further stated "[t]hat all Wallace Family Heirs wish to **dissolve** and **distribute** all family assets evenly after the Certified Audit is completed and not wait until 2046." [*Id.*, ¶ 5 (emphasis in original).] The reference to the year 2046 is an apparent reference to the fifty year duration of the Lorice T. Wallace Family, Limited Partnership.

9.      Around the same time, Ms. Jage delivered a handwritten letter to Ms. Hastings, stating that "[a]ll I want to do is end this & distribute all the available assets now not 25 yrs. from now . . . ." [Exhibit "5", 8/21/2002 letter from Ms. Jage to Ms. Hastings.] Ms. Jage went on to say: "I need the money now & I don't want to wait anymore.  If we all agree to end the trusts & distribute the assets no judge can say we can't." [*Id.* at 2 (unnumbered).]

10.      In September 2002, Mr. Wallace filed a document in bankruptcy court, alleging that Mr. Saffa and others associated with the successor co-trustees engaged in "a pre-meditated criminal conversion (racketeering) **plan of action** . . . to alter Trusts conceived in 1974 . . . ." [Exhibit "6", 9/20/2002 Motion to Dismiss, at p. 2, ¶ 5 (emphasis in original).]

11.      On March 12, 2003, Mr. Wallace filed an Emergency Application to Assume Original Jurisdiction, in Oklahoma Supreme Court Case No. 98966.  On the first unnumbered page of the document, Mr. Wallace alleged that he filed the March 12, 2003 Emergency Application "after (4) four years of litigation wherein [Mr. Wallace] has attempted to protect his family and their assets from a **conspiracy** that was **premeditated** and acted upon immediately after his father's death in 1990.  The success or failure of the conspiracy depended upon the original family trust attorney action in concert with [Mr. Wallace's] attorney and C.P.A., to covertly alter trust documents formed in 1974 and related realty operating companies which [Mr.

4

Wallace's] parents designed to preserve the corpus of the Wallace Family Estate." [Exhibit "7",
3/12/2003 Emergency Application (Case No. 98966), at p. 1 (unnumbered) (emphasis in
original).]

12.    Again on August 6, 2003, in a Complaint filed by Mr. Wallace in the U.S. District
Court for the Northern District of Oklahoma, Mr. Wallace alleged that, "[i]n 1993, under the
guise of Estate Planning, Saffa fraudulently induced Lorice to sign a Restatement of her
Revocable Trust, completely negating all checks and balances placed there and in Frank's trust,
secretly inserting himself and Trust Company of Oklahoma as successor trustees." [Exhibit "8",
8/6/2003 Complaint (Case No. 2003-CV-522), at p. 4, ¶ 31.]

13.    On December 30, 2003, Mr. Wallace took his litigation to state court in Du Page
County, Illinois, forcing Mr. Saffa to retain Illinois counsel at great expense to the LTW
Revocable Trust. In his Complaint filed in Illinois, Mr. Wallace made his position regarding the
trust instruments very clear, stating as follows:

> 11.    In 1993, Saffa restated the Lorice T. Wallace Revocable Trust,
> inserting himself as successor trustee. He never advised Roma and Stephen of the
> Restatement of Trust naming himself as successor trustee when Patrick was
> named as a successor trustee.
>
> 12.    Saffa drafted amendments to Lorice T. Wallace Revocable Trust
> and never advised Roma and Stephen of the change in these trusts in 1993 . . . .
>
> 13.    Pursuant to the terms of the 1974 trust agreements established by
> Mrs. Wallace and her late husband, Frank Wallace, the Wallace's [*sic*] provided
> that upon his death and/or resignation that their son, Stephen Wallace and Patrick
> would become the co-trustees.
>
>        . . . .
>
> 15.    It was never Mrs. Wallace's intent or desire that Saffa be inserted
> as trustees of any of the Wallace family trusts.
>
> 16.    Saffa was only able to insert himself as trustee based upon Mrs.
> Wallace's reliance and trust in Saffa and Trust Company as a fiduciary, who
> represented to Mrs. Wallace that he was preparing estate-planning documents.

5

17. Mrs. Wallace never desired to change any trust to Saffa but only did so upon detrimental reliance and trust in Saffa as Mrs. Wallace's fiduciary and tax counsel.

18. Saffa was only inserted as co-trustees by the Wallace trust based upon misrepresentations and Mrs. Wallace's trust and reliance upon Saffa as a fiduciary and tax counsel under the guise of estate planning after Frank's death in 1990.

19. It was never Mrs. Wallace's intent or desire to change any of the trusts but only did so because of her reliance and trust in Saffa and Trust Company.

[Exhibit "9", 12/30/2003 Complaint (Case No. 2003CH001896), at pp. 2-3.]

14. Many of these challenges were made at a time when Mr. Wallace was proceeding on a pro se basis. But the challenges continued even when Mr. Wallace was represented by counsel. In a footnote contained in a brief filed on October 20, 2005 in Oklahoma Supreme Court Case No. 102346, Mr. Wallace's attorney addressed a provision of one of the controlling instruments of the LTW Revocable Trust. In addressing the provision, Mr. Wallace's attorney stated: "Because Saffa drafted this provision, while wearing his trustee hat, serious questions are raised about its validity." [Exhibit "10", 10/20/2005 Appellants' Combined Reply (Case No. 102346), at p. 9 n.8.] The text of the footnote makes clear that Mr. Wallace is referring to Amendment Number One to the Restatement of the Lorice T. Wallace Revocable Trust Dated December 26, 1974. The amendment was executed in 1993. The amendment is attached to the September 11, 2002 Petition for Instructions (Case No. PT-2002-56) as Exhibit "C". The amendment is one of the controlling instruments of the LTW Revocable Trust.

15. During a hearing on October 21, 2005, Mr. Wallace's counsel was asked to comment on the text of footnote 8 of the October 20, 2005 Combined Reply Brief, referenced in the preceding paragraph. The October 21, 2005 hearing related to Trust Company's request for a final order regarding the LTW Life Insurance Trust. When Trust Company moved for the admission of the controlling instrument of the LTW Life Insurance Trust, Mr. Wallace's counsel

6

objected to its admission, stating that "[t]here are issues, Your Honor, about the validity of this document which was executed after Mr. Wallace's death when Mr. Saffa, acting as both the attorney for Mrs. Wallace and the trustee of the Lorice T. Wallace Revocable and Irrevocable Trust, was engaging in conduct that no court has ever approved. And that is to deal – to engage in self-dealing, to insert language in trust provisions or in trust documents that would ultimately benefit him. And so we would – we would object on the grounds that the validity of this and whether it was really something Mrs. Wallace intended to do or whether it was something that was obtained from her through fraud, trick, etc., etc., and breach of fiduciary duty by Mr. Saffa." [Exhibit "11", 10/21/2005 Trans. (PT-2002-56), at p. 72, l. 17 through p. 73, l. 5.]

16.     At that point, Trust Company's counsel pointed out the existence of a no-contest provision within the controlling instrument of the LTW Life Insurance Trust. Mr. Wallace's counsel responded: "[T]hat provision was inserted by Mr. Saffa knowing exactly what he was doing, exactly where he was headed in putting himself in the driver's seat, being able to call the shots, being able to prevent the beneficiaries of this – these trusts from having what their parents intended for them to have. And that is an issue that was raised before the Supreme Court yesterday in the document. If the Court will look at that same paragraph or Footnote 7 on Page 8 of the combined reply." [Exhibit "11", 10/21/2005 Trans. (PT-2002-56), at p. 73, l. 24 through p. 74, l. 8.]

17.     After this statement was made, the Court provided Mr. Wallace's attorney to have a recess to confer with Mr. Wallace regarding whether he wished to retract the statement challenging the validity of the controlling instrument of the LTW Life Insurance Trust. [Exhibit "11", 10/21/2005 Trans. (PT-2002-56), at p. 75, ll. 10-16.] Before taking a break, Mr. Wallace's attorney clarified that she had been referring to footnote 8 of the October 20, 2005 Combined Reply, filed in Case No. 102346, "which says Saffa inserted a provision in Ms. Wallace's trust

7

agreement in 1998 that dealt with her incapacity." [Exhibit "11", 10/21/2005 Trans. (PT-2002-56), at p. 76, ll. 11-15.] Mr. Wallace's attorney then quoted from the Combined Reply, stating: "Upon finding that attorney trustee had breached his fiduciary duties by failing to fully and fairly disclose his interest in the amendment making trust irrevocable, trial court had authority to declare amendment void and remove trustee from his position." [Exhibit "11", 10/21/2005 Trans. (PT-2002-56), at p. 76, l. 24 through p. 77, l. 3.]

18.    Following a break, Mr. Wallace's attorney attempted to backtrack from her arguments, stating that the arguments did not relate to the controlling instrument of the LTW Life Insurance Trust, which was executed in 1992. "I was speaking about things that occurred after – or in 1993, not 1992. And to the extent that Mr. Saffa's integrity or anything was impugned as it relates to this document, those statements are withdrawn because, as I said, I was thinking about a different time frame." [Exhibit "11", 10/21/2005 Trans. (PT-2002-56), at p. 78, ll. 16-22.] As noted above, the argument referenced by Mr. Wallace's attorney was directed to an amendment executed in 1993. The amendment is attached to the September 11, 2002 Petition for Instructions (Case No. PT-2002-56) as Exhibit "C". The amendment is one of the controlling instruments of the LTW Revocable Trust.

19.    In a more recent hearing, Mr. Wallace's attorney has continued her attack (on behalf of both Mr. Wallace and Ms. Jage) against any trust instrument prepared by Mr. Saffa. In a hearing in this action on March 2, 2006, the attorney for Mr. Wallace and Ms. Jage argued that Case No. PT-2002-56 should be dismissed for lack of subject-matter jurisdiction. Among her arguments against subject-matter jurisdiction was an argument that the successor co-trustees had failed to provide adequate authority to their attorneys when actions for instruction were filed with the District Court of Tulsa County. In support of this argument, the attorney for Mr. Wallace and Ms. Jage stated: "The Supreme Court was also asked to consider the facts that are

unrefuted in this Court, in hearings conducted before this Court, that Mr. Poe was hired by only one of two trustees. And under Oklahoma law, that conduct is a nullity. The Trust attorneys, which they come to this Court and ask this Court to award them – continually award them attorney fees, taking money away from the beneficiaries, to benefit these lawyers and other lawyers in the State of Oklahoma, City of Tulsa. That Trust instrument, it said itself, it's self-said. *And Mr. Ronald Saffa is setting here, collecting money from this Court, through this Court. Both have documents that he got Mrs. Wallace, his aunt, to sign.* And it said specifically the conduct of these trustees must be joined. That cannot act individually. That was the ruling of the Supreme Court of Oklahoma. That is my answer to the Court." [Exhibit "12", 3/2/2006 Trans. (PT-2002-56), at p. 9, l. 15 through p. 10, l. 5 (emphasis added).]

20.     Mr. Wallace himself has maintained his approach of challenging the controlling trust instruments. On January 24, 2006, Mr. Wallace delivered a "notice of intent to sue" to a number of persons associated with the LTW Revocable Trust and LTW Irrevocable Trust, either through representation of the successor co-trustees or through court-approved real estate transactions. Attached to the notice of intent to sue was an apparent draft of a petition that Mr. Wallace intended to file. In paragraph 28, Mr. Wallace alleged that "[i]n 1993, Ronald Saffa fraudulently restated the Lorice T. Wallace 1974 Revocable Trust when Lorice wanted only to make an amendment, inserting himself and Trust Company of Oklahoma as successor trustees in direct contravention of the identical Frank & Lorice Trusts of 1974 and the amendments thereto." [Exhibit "13", 1/24/2006 proposed petition, at p. 4, ¶ 28.]

21.     Most recently, on May 9, 2006, Ms. Jage filed a Complaint in the U.S. District Court for the Northern District of Oklahoma, expressly challenging the controlling instruments of the Trusts. In the Complaint, Ms. Jage alleged:

25.     In 1993, following Mr. [Frank A.] Wallace's death, Saffa restated The Lorice T. Wallace Revocable Trust ["LTW Revocable Trust"] and inserted

9

himself and TCO as successor co-trustees. He advised Mrs. Wallace to sign the Restatement of Trust, with its provision naming him as a successor co-trustee without advising her to seek the independent advice of a second attorney. . . . Amendment Number One to the restated LTW Revocable Trust was drafted by Saffa and signed by Mrs. Wallace on February 12, 1998. . . .

. . . .

27.    Although an irrevocable trust had already been formalized, Saffa prepared a new trust indenture creating the Lorice T. Wallace Irrevocable Trust ["LTW Irrevocable Trust"] for Mrs. Wallace's signature in 1996. This instrument . . . inserted Saffa and TCO as co-trustees.

. . . .

31.    It was never Mrs. Wallace's intent or desire to change the terms of any of her trusts or create new trust; she only did so in reliance on recommendations Saffa made while acting in a fiduciary capacity and his misrepresentations concerning adverse tax consequences if she did not follow his advice.

32.    It was never Mrs. Wallace's intent or desire that Saffa be inserted as successor co-trustee of any of her trusts. Saffa was only able to succeed in this respect because of the fiduciary position he occupied as Mrs. Wallace's tax attorney, Mrs. Wallace's reliance on her nephew's self-serving proposals and recommendations, and Saffa's playing on the fact that he was not simply a tax lawyer, but her nephew.

33.    It was never Mrs. Wallace's intent or desire that TCO be inserted as a successor co-trustee of any of her trusts. In agreeing to this, Mrs. Wallace relied upon advice she was given by Saffa, acting in his fiduciary capacity as her tax attorney, as well as her nephew.

. . . .

84.    Saffa breached his fiduciary duty when he amended Mrs. Wallace's trusts to insert himself as a successor co-trustee without advising her to seek the independent opinion of a second lawyer and when he included terms in Amendment Number One to LTW Revocable Trust which purported to immunize TCO and himself from liability for breach of trust and, therefore, is against "public policy."

[Exhibit "14", 5/9/2006 Complaint (Case No. 2006-CV-00249), at pp. 5-7, 20.]

## ARGUMENT AND SUPPORT

While Oklahoma has yet to address a no-contest provision in the context of a trust, it is

likely that the appellate courts will view no-contest provisions of trusts in the same way that the

courts have viewed no-contest provisions in wills. "No-contest" provisions in wills are valid in Oklahoma and have been consistently enforced by the courts. *See Estate of Massey*, 1998 OK CIV APP 116, ¶ 3, 964 P.2d 238; *Estate of Westfahl*, 1983 OK 119, ¶ 5, 674 P.2d 21. In fact these provisions are favored by public policy because they limit litigation and discourage family feuds over the testator's competence and the size of gifts under the will. *Id.* The same policy considerations support enforcement of no-contest provisions in a trust as in a will. Many states have enforced these clauses in trusts. *See Hannam v. Brown*, 956 P.2d 794, 798 (Nev. 1998). Furthermore, Oklahoma has recognized the validity of trust provisions that condition the beneficiary's right to benefit under the trust on the occurrence or non-occurrence of some event. *See Hulett v. First Nat'l Bank & Trust Co.*, 1998 OK 21, ¶ 17, 956 P.2d 879.

Of course, provisions in a will which provide for forfeiture will be strictly construed in favor of the beneficiary. *Estate of Westfahl*, 1983 OK 119, ¶ 5, 674 P.2d 21. It is anticipated that the Oklahoma appellate courts will take a similarly strict view of a forfeiture provision contained in a trust instrument.

The facts and circumstances of each case determine whether a party has contested a will or trust. *Estate of Westfahl*, 1983 OK 119, ¶ 5, 674 P.2d 21. "The word, contest, as it pertains to a no contest clause is defined as any legal proceeding designed to result in the thwarting of the testator's wishes as expressed . . . ." *Id.* In determining whether a particular fact or circumstance constitutes a contest or challenge, the Court should look to the testator's purpose and verbiage. *Id.* Such purpose might be evidenced by circumstances surrounding the creation of the will or trust. *Id.* It can be generally expected that a modern, well-crafted trust instrument will reveal that the principal purpose of a no-contest provision is to avoid disharmony and litigation regarding the provisions of the trust. Indeed, the controlling instrument of the LTW Revocable Trust states: "It is the intention of the Grantor to prevent and eliminate as much of the

11

disharmony, the destruction of relationships, and disputes among the descendents of the Grantor as possible." [Amendment No. 1 to controlling instrument of LTW Revocable Trust, attached to 9/11/2002 Petition for Instructions (Case No. PT-2002-56) as Ex. "C", at p. 2 (TRUST 765), § 3 (adding Section 11.13 to the controlling instrument).]

The purpose of preventing and eliminating disharmony and disputes has not been fully met, as the Court's file will demonstrate. Given their ages (57 years and 55 years) and given their anticipated life expectancies, it is very possible that the litigation strategies pursued by Mr. Wallace and Ms. Jage could continue to cause harm to the Trusts over an extended period of time. As recently as June 27, 2006, Mr. Wallace filed a second emergency motion in Tulsa County Case No. CJ-2006-551, requesting the appointment of a grand jury, alleging fraud, and seeking the appointment of a receiver. While the second emergency motion relates to the LTW Life Insurance Trust rather than the LTW Revocable Trust or the LTW Irrevocable Trust, it is indicative of the aggressive approach taken by Mr. Wallace in his litigation attacks against the Trusts. Indeed, litigation pursued by both Mr. Wallace and Ms. Jage has disrupted real-estate property sales approved by the District Court of Tulsa County, causing potential losses to the Trusts. These actions by Mr. Wallace and Ms. Jage have delayed several critical steps necessary in the administration of the Trusts.

Nonetheless, only a clear challenge to the will or trust will invoke a no-contest or forfeiture provision. *Estate of Westfahl*, 1983 OK 119, ¶ 5, 674 P.2d 21. "[T]he forfeiture clause should not be invoked if the contestant has probable cause to challenge the will based on forgery or subsequent revocation by a later will or codicil." *Id.* at ¶ 6. No such circumstances appear to exist here. Mr. Wallace and Ms. Jage appear to have challenged the provisions of the Trusts because (1) they dislike the successor co-trustees, (2) they desire immediate distribution from the Trusts despite the terms of the controlling instruments, and (3) they disagree with the manner and

12

timing of distribution of property under the controlling instruments of the Trusts. Accordingly, forfeiture may be appropriate in this case.

With many of their challenging assertions, Mr. Wallace and Ms. Jage acted on a *pro se* basis, rather than with the assistance of an attorney. One might argue that this fact should mitigate in their favor. The authorities take a different view. Under Oklahoma law, forfeiture should not occur if the contestant has probable cause to challenge the will or trust. *Estate of Westfahl*, 1983 OK 119, at ¶ 6. The *Restatement (Third) of Property* explains that

> Probable cause exists when, at the time of instituting the proceeding, there was evidence that would lead a reasonable person, properly informed and advised to conclude that there was a substantial likelihood that the challenge would be successful. A factor that bears on the existence of probable cause is whether the beneficiary relied upon the advice of independent legal counsel sought in good faith after a full disclosure of the facts.

*Restatement (Third) of Property* § 805 cmt. c (2003).

The fact that Mr. Wallace and Ms. Jage acted at times without counsel thus evidences their lack of probable cause. Several courts have noted the importance of advice of counsel in determining whether the contestant acted with probable cause. *See Estate of Shumway*, 9 P.3d 1062, 1066 (Ariz. 2000); *Estate of Mumby*, 982 P.2d 1219, 1224-25 (Wash. Ct. App. 1999); *Estate of Peppler*, 971 P.2d 694, 697 (Colo. Ct. App. 1998); *Estate of Kubick v. Pacific Nat'l Bank of Washington*, 513 P.2d 76, 80 (Wash. Ct. App. 1973). Lacking probable cause, and in many instances acting without advice of counsel, Mr. Wallace and Ms. Jage have challenged the controlling instruments of the Trusts, and the authority of the successor co-trustees to disburse the assets according to the controlling instruments. Forfeiture may thus be appropriate.

Several factors might weigh against forfeiture in this case. The Petitioners point to these factors for the purpose of obtaining a full and complete resolution of the forfeiture issue as to the LTW Revocable Trust and the LTW Irrevocable Trust, at least based upon information available as of the date that this Motion is prepared. The Petitioners do not undertake to make

13

Respondents' argument for them, and have not been asked to do so. The factors weighing against forfeiture may be as follows:

1.      Although forfeiture may be appropriate, the law abhors forfeiture. *See, e.g., Pirkey v. State ex rel, Martin*, 1958 OK 153, ¶ 11, 327 P.2d 463, 467 ("It has generally been held that courts abhor forfeitures and all provisions providing therefor in statutes or deeds will be strictly construed and forfeitures will not be decreed except when required by clear language contained in the statute or deed.").

2.      Based upon their litigation conduct, it appears that Mr. Wallace and Ms. Jage may both be suffering from either mental or emotional illnesses and may not have understood the nature of their filings and that these filings might be challenges to the validity of the Trusts. The successor co-trustees have no evidence of such an illnesses and can only draw lay conclusions based upon observations of the outlandish statements contained in their many filings. The successor co-trustees have found no authority directly providing that mental illness is an excuse from violation of a no-contest provision. It does not appear that ignorance is an excuse. Nonetheless, leading authorities suggest that some courts will excuse an infant (generally speaking, under age or lacking in majority) from the effect of a no-contest provision. *See, e.g.,* Annotation, *Validity and Enforceability of Provision of Will or Trust Instrument for Forfeiture or Reduction of Share of Contesting Beneficiary,* 23 A.L.R.4th 369, 5[a] (citing *Farr vs. Whitefield,* 33 N.W.2d 791 (Mich. 1948)). If an infant can be excused from such conduct, so, perhaps, too, can a person lacking control over his or her mental faculties, as might be the case with Mr. Wallace and Ms. Jage.

3.      Mr. Wallace and Ms. Jage have long challenged the actions of the successor co-trustees. In their zeal to present their point of view to the Court, the Respondents may have inadvertently challenged the trust. Forfeiture is not appropriate where it violates public policy.

14

*In re Estate of Bank*, 699 N.E.2d 1103, 1107 (Ill. App. Ct. 1998). Further, forfeiture should not be guided solely by the verbage of the trust provision and conduct at issue. Rather, the Court must examine the full range of facts and conclusions in this case. *Id.* If the facts reveal that forfeiture would violate public policy in this case, then forfeiture is not appropriate.

### CONCLUSION

The authorities and factual statements presented herein represent the presentation of the Petitioners, based on information available to them as of the filing of this Application, as to the issue of whether Respondents Stephen P. Wallace and Mary Roma Jage have violated the no-contest provisions of the Lorice T. Wallace Revocable Trust and the Lorice T. Wallace Irrevocable Trust. The Petitioners request that the Court provide instruction on this matter.

Respectfully submitted,

DOERNER, SAUNDERS, DANIEL & ANDERSON, L.L.P.

By:  _____
James C. Milton, OBA No. 16697
Elizabeth W. Carroll, OBA No. 20646
320 South Boston Ave., Ste. 500
Tulsa, Oklahoma 74103-3725
918-582-1211; fax 918-591-5362
ATTORNEYS FOR PETITIONER,
THE TRUST COMPANY OF OKLAHOMA

Joined by:    James E. Poe, OBA No. 7198
COVINGTON & POE
111 West 5th Street, Ste. 740
Tulsa, Oklahoma 74103
918-585-5537; fax 585-5530
ATTORNEY FOR PETITIONER,
RONALD J. SAFFA

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the _30_ day of _June_ , 2006, a true and correct copy of the above and foregoing document was mailed, with proper postage, to the following:

Patricia Wallace Hastings
2934 E. 73rd Pl.
Tulsa, Oklahoma  74136

Stephen P. Wallace
6528 E. 101st Street, D-1 #304
Tulsa, Oklahoma 74133

Mary Roma Wallace Jage
1153 Overton Ct.
Naperville, Illinois  60540

James E. Poe, Esq.
Covington & Poe
111 West 5th Street, Suite 740
Tulsa, Oklahoma  74103

William R. Grimm, Esq.
Barrow & Grimm, P.C.
610 South Main, Ste. 300
Tulsa, Oklahoma  74119-1248

Kenneth E. Crump, Jr., Esq.
Cooper, McKinney & Woosley, PLLP
401 South Boulder Ave.
3300 MidContinent Tower
Tulsa, Oklahoma  74103

Joan Godlove, Esq.
2121 South Columbia
Suite 500
Tulsa, Oklahoma  74119-3519

_____
James C. Milton

16

SELLERS CLOSING STATEMENT

## Guaranty Abstract Company

E 118540

| | |
|---|---|
| **SELLER:**<br>LORICE T. WALLACE FAMILY LIMITED PARTNERSHIP<br>LORICE T. WALLACE SUCCESSOR TRUSTEE O THE FRANK A. WALLACE REVOCABLE TRUST PART SE/4 SE/4 6-18-14 | **BUYER:**<br>SEAYCO-THF EASTSIDE MARKET, L.L.C. |

| EXPLANATION | DEBITS | CREDITS |
|---|---|---|
| SALES PRICE | $ | $6,255,000.00 |
| **EXPENSES** | | |
| Recording Fees: Certificates of Non Dev. & Estate tax release | 24.00 | |
| Dup int. given on E111287 | 476.32 | |
| Closing Fees 1/2 Guaranty Abstract | 750.00 | |
| T118540/WA2211 Certificates of Non Developmen | 35.00 | |
| **PRORATIONS** | | |
| County Taxes Est. 99 based on actual 1998 | | |
| From: 01-01-99 To: 04-14-99 | | |
| 103 days @ $.1068 per diem ($39.00) | 11.01 | |
| **DISBURSEMENTS** | | |
| Real Estate Commission Stan Frisbie Real Est. | 125,000.00 | |
| Real Estate Commission Stephen P. Wallace, Broker | 125,000.00 | |
| Interest at 9% on 1 year letter of credit  (180,000.00) | | |
| Interest on 2 year Letter of Credit  (360,000.00) | | |
| **SETTLEMENT** | | |
| Letter/Credit Wallace Family Partnership | 2,000,000.00 | |
| Letter Credit Frank A. Wallace Revocable Tr. | 2,000,000.00 | |
| BALANCE DUE to Seller | $2,003,703.67 | |

DISBURSEMENT

1/2 Net proceeds to Wallace Family Limited Partnership
$1,001,851.83

1/2 Net proceeds to Frank A. Wallace Trust
$1,001,851.84

**EXHIBIT**

**B**

eller understands the Closing or Escrow Agent has assembled this information representing the transaction from the best information allable from other sources and cannot guarantee the accuracy thereof. Any real estate agent or lender involved may be furnished a py of this Statement. Seller understands that tax and insurance prorations and reserves were based on figures for the preceding year supplied by others or estimates for current year, and in the event of any change for current year, all necessary adjustments must be de between Purchaser and Seller direct. The undersigned hereby authorizes GUARANTY ABSTRACT COMPANY to make expenditures disbursements as shown above and approves same for payment. The undersigned also acknowledges receipt of Loan Funds, if licable, in the amount shown above and receipt of a copy of this Statement.

LORICE T. WALLACE FAMILY LIMITED PARTNERSHIP

By _Lorice T. Wallace_

_Closer_

APRIL 20, 1999 4:00 P.M.        By _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

In Re Petition of the Trust )   Case No. 01CV0880H(X)
Company of Oklahoma and )
Ronald J. Saffa, Interim )   Case No. PT-2000-21
Trustees, for instructions )   Judge Gregory Frizzell
and construction of Trust. )
 )
 )
Petition of Bank One, N.A. )
For instructions and construction )   Case No. PT-2000-44
of Trust, )   Judge Gregory Frizzell
 )
Bank of America, N.A. )
   Plaintiffs, )   Case No. CJ-2000-1900
 )   (as consolidated and bifurcated)
v. )
 )
Stephen Paul Wallace, et al., )
   Defendants )
 )

STATE OF OKLAHOMA )
 ) ss
COUNTY OF TULSA )

## AFFIDAVIT OF DAVID R. PAYNE

I, David R. Payne, do solemnly attest to the following:

1.  I am a Certified Public Accountant (CPA), Certified Insolvency and Restructuring Advisor (CIRA), Certified Turnaround Manager (CTP) and an Accredited Senior Appraiser (ASA) retained to evaluate documents received from Stephen P. Wallace regarding assets, liabilities, income and expenditures of the Lorice T. Wallace Family Limited Partnership ("Partnership"), The Lorice T. Wallace Revocable Trust ("LTW Trust") and the Frank A. Wallace Revocable Trust ("FAW Trust") for calendar years 1990 to 2001 (collectively the "Trusts").

2.  Stephen Wallace appears to be both a limited partner of the Partnership and a beneficiary of the Trusts.

**EXHIBIT**
**C**

3.  According to Section 16(a) of the Partnership Agreement, books and records "shall be open to inspection and examination of all Partners or their duly authorized representatives". According to Article 10.01 of the Trust Agreements, the Trustee shall make a report in writing at least once each year. Each report shall include a statement "of such other acts of the Trustee as may be necessary to furnish each beneficiary with adequate information as to the condition of the Trust Estate". According to Article 10.02 of the Trust Agreements, the records of the Trustee "shall be open at all reasonable times to inspection of the Grantor and the beneficiaries".

4.  The LTW Trust contributed significant assets to the Partnership in exchange for limited partner interests in 1996. Since 1990, significant transactions affecting assets and generating income and cash proceeds have occurred. Additionally, significant changes in the limited partnership unit ownership and income sharing interests of the Partnership have occurred. Finally, significant expenditures including professional fees have been incurred. All of these transactions affect the net asset value and distribution capacity of the Partnership and the Trusts.

5.  The documents available to Stephen Wallace are insufficient to reasonably evaluate the nature, composition, disposition, completeness and appropriateness of the transactions entered into since 1990.

6.  An example of one transaction which requires further documentary support is the sale of property at 71st and Garnett. The property located at 71st and Garnett sold to Seayco for approximately $6.25 million. The sale was scheduled to be paid in three separate installments over a three-year period for the benefit of the Lorice T. Wallace Family Limited Partnership and the Frank A. Wallace Trust. The first installment in 1999 was designated for two accounts at Nations Bank for the benefit of the Frank A. Wallace Trust and the Lorice T. Wallace Trust. The first installment was wired (instead) to F&M Bank to an account titled in the name of Trust Company of Oklahoma, Trust Funds. The second installment appears to have been deposited into the Lorice T. Wallace Limited Partnership account and the Frank A. Wallace Trust account. The first half was then transferred to an unknown account and the second to a separate Frank A. Wallace account at Bank of America. Banking information for the third payment in April has not been provided. Based on the information provided and the documents not yet produced, we are unable to make a determination on the final disposition of the funds.

Page 2 of 2

7.      I have prepared a listing of documents which should be maintained in the ordinary course of business, but for which Stephen Wallace does not have in his file or for which no documentation has been provided. The documentation which is necessary for a reasonable evaluation of transactions is set forth on Exhibit A.


Further Affiant Saith Not

David R. Payne
D. R. Payne & Associates, Inc.
119 North Robinson, Suite 400
Oklahoma City, OK 73102
Telephone: (405) 272-0511
Facsimile: (405) 272-0501


Subscribed and sworn to before me this 7th day of December 2001.

Shayla M. McKenzie
NOTARY PUBLIC

MY COMMISSION EXPIRES:
3-1-2003

Page 3 of 3

# Real Estate Sale Approval Hearing of 8-26-05

I, A. Ladd Larson, certify that I am of age & competent to testify & that based on my notes & observations the following is a true & correct account of what I observed on August 26, 2005. I do this under penalty of law.

The case was regarding court approval of a sale of piece of property that had been represented to be in the Lorice T. Wallace Family Ltd. Partnership. The Trustees who act as Managing Partner for the Partnership requested the court approval of this sale.

At one point in the hearing it was brought up that Bank One must own some part of this property & that they weren't present & hadn't even been notified of the hearing. Since there seemed to be some question as to the ownership of this property Mr. Wallace & I went down stairs to the County Clerk's office & got a copy of the ownership of the property in question, during a short recess. It showed the property to be in the names of Frank & Lorice Wallace individually, not in trust & for certain not in the Family Ltd. Partnership.

When we got back to the courtroom Mr. Wallace gave the document to the court reporter to be entered into the record. He labeled it Wallace #1. This document created quite a stir in the courtroom. Moments earlier Mr. Melton seemed to be in a hurry to get somewhere else, but when he returned from the Judge's chambers he addressed Mr. Poe with the statement "I think we're in trouble".

Towards the end of the hearing Mr. Wallace asked to be sure the ownership document had actually been entered into the record. At that time Judge Frizzell informed Mr. Wallace that the title document was not in evidence because of some technicality & when Mr. Wallace requested again that it be entered & that I was a witness to how the document had been secured. Mr. Poe objected & Judge Frizzell sustained the objection. The Judge wanted to keep the ownership document, probably because it had been labeled by the court reporter, Wallace #1. Since it wasn't being allowed in the record Mr. Wallace took it back.

**EXHIBIT**

**D**

At that time the Judge approved the sale knowing full well that the parties asking for the approval of the sale didn't own any part of the property offered for sale.

KIMBERLY P. DEARDORFF
Notary Public
State of Oklahoma
Commission # 01009980  Expires 7/16/09

Kimberly P. Deardorff
Notary Public

18, October, 2005

To whom it may concern,

I hereby certify, under penalty of law, that the following is a true and correct account of what I observed in Judge Frizzell's court on 26, August, 2005.

The case pending before the court was a request to approve the sale of certain property that was represented to be in the Lorice T. Wallace Family Limited Partnership. The Trustees for the Partnership had requested the court approval.

During a brief recess, Steve Wallace an heir went to the Tulsa County Assessor's office to see who was in title to the subject property. The records showed the title to the property was held individually by Mr. Wallace's parents and was clearly not under control of the Partnership. Mr. Wallace asked that this document, the ink still wet, be entered into the court record. Judge Frizzell denied the request under some technicality that the evidence had been offered improperly. Mr. Wallace requested again properly that it be entered. Mr. Poe objected and Judge Frizzell sustained the objection. Even after this document had been seen by the Judge, whether entered into evidence or not, he went on and approved the sale.

I have been in mortgage banking for my entire adult life. I was astounded that the Judge went ahead with the approval of the sale when it was clear that the trustees had no right to offer the property for sale. This was the most blatant example of judicial prejudice I have ever witnessed in my life.


Donald W. Broome


State of Oklahoma
Oklahoma County

This document was acknowledged before me this 18th Day of October, 2005


Notary Public

WENDY WILLIAMS
Notary Public
State of Oklahoma
Commission # 00019395 Expires 12/02/08

EXHIBIT
E

JAMES M. INHOFE
OKLAHOMA

WASHINGTON OFFICE
453 Russell Senate Office Building
Washington, DC 20510-3603
(202) 224-4721

TULSA OFFICE
1924 South Utica, Suite 530
Tulsa, OK 74104
(918) 748-5111

OKLAHOMA CITY OFFICE
1900 N.W. Expressway, Suite 1210
Oklahoma City, OK 73118
(405) 608-4381

COMMITTEES:
ARMED SERVICES

ENVIRONMENT AND
PUBLIC WORKS

# United States Senate

WASHINGTON, DC 20510–3603

January 4, 2006

Mr. Stephen P. Wallace
6528 East 101st #D-1 304
Tulsa, Oklahoma 74133

Dear Mr. Wallace:

Thank you for contacting my office concerning District Judge Gregory Frizzell.

I have forwarded your concerns to the United States Department of Justice. As soon as I receive a response to my inquiry, I will contact you.

I appreciate the opportunity to be of assistance. If you have any questions, please do not hesitate to contact my assistant, Chris Stover, in my Oklahoma City office at 405-608-4381.

Sincerely,

James M. Inhofe
United States Senator

JMI:cs


EXHIBIT
F

JAMES M. INHOFE
OKLAHOMA

WASHINGTON OFFICE
453 RUSSELL SENATE OFFICE BUILDING
WASHINGTON, DC 20510-3603
(202) 224-4721

TULSA OFFICE
1924 SOUTH UTICA, SUITE 530
TULSA, OK 74104
(918) 748-5111

OKLAHOMA CITY OFFICE
1900 N.W. EXPRESSWAY, SUITE 1210
OKLAHOMA CITY, OK 73118
(405) 608-4381

COMMITTEES:
ARMED SERVICES

ENVIRONMENT AND
PUBLIC WORKS

# United States Senate

WASHINGTON, DC 20510–3603

January 4, 2006

Mr. Stephen P. Wallace
6528 East 101st #D-1 304
Tulsa, Oklahoma 74133

Dear Mr. Wallace:

Thank you for contacting my office concerning District Judge Gregory Frizzell.

I have forwarded your concerns to the United States Department of Justice. As soon as I receive a response to my inquiry, I will contact you.

I appreciate the opportunity to be of assistance. If you have any questions, please do not hesitate to contact my assistant, Chris Stover, in my Oklahoma City office at 405-608-4381.

Sincerely,

James M. Inhofe
United States Senator

JMI:cs



PRINTED ON RECYCLED PAPER

JAMES M. INHOFE
OKLAHOMA

WASHINGTON OFFICE
453 RUSSELL SENATE OFFICE BUILDING
WASHINGTON, DC 20510-3603
(202) 224-4721

TULSA OFFICE
1924 SOUTH UTICA, SUITE 530
TULSA, OK 74104
(918) 748-5111

OKLAHOMA CITY OFFICE
1900 N.W. EXPRESSWAY, SUITE 1210
OKLAHOMA CITY, OK 73118
(405) 608-4381

COMMITTEES:
ARMED SERVICES

ENVIRONMENT AND
PUBLIC WORKS

# United States Senate
WASHINGTON, DC 20510-3603

RECEIVED,
SECRETARY OF THE SENATE

06 JUN -7 PM 4: 02

June 7, 2006

Mr. Robert Walker
Chief Counsel and Staff Director
Select Committee on Ethics
SH-220
Washington, DC 20510

Dear Mr. Walker,

Attached is an amendment you recently requested on Schedule IIIA of the 2005 *2004*
Financial Disclosure Report.  If you have additional questions, please do not
hesitate to ask.

Sincerely,

James M. Inhofe
United States Senator





**AL LINDLEY**
State Representative
District 93

CAPITOL:
2300 N. Lincoln Blvd.
State Capitol Building
Room 328A
Oklahoma City, OK 73105-4885
(405) 557-7371

HOME:
2529 S.W. 55th Street
Oklahoma City, OK 73119
(405) 681-8352

## House of Representatives

STATE OF OKLAHOMA
DISTRICT 93

COMMITTEES:

MEMBER:

Revenue and Taxation
Rules

Health & Human Services
Ranking Democrat

July 24, 2006

Speaker Todd Hiett
House of Representatives
2300 N. Lincoln
Oklahoma City, OK 73105

Dear Speaker Hiett:

Recently I received a copy of a Petition of Judicial Impeachment from Stephen P. Wallace representing Lisa F. Wallace. The petition calls for Articles of Impeachment upon Oklahoma Supreme Court Chief Justice Joseph Watt, Tulsa County Presiding District Judge Gregory Frizzell and Tulsa County District Judge Ronald Shaffer.

The petition contains very serious allegations that should be examined by as Special House Committee appointed by your office and under the direction of the Oklahoma State Constitution. It is my opinion that naming a Special House Committee to examine the alleged charges is the most appropriate avenue to resolve the matter.

I look forward to your timely reply.

Sincerely,

Al Lindley
State Representative
District 93

AL/lj

EXHIBIT
H