# Exhibit "16"

IN THE DISTRICT COURT OF TULSA COUNTY
STATE OF OKLAHOMA

DISTRICT COURT
F I L E D

SEP 1 1 2002

SALLY HOWE SMITH, COURT CLERK
STATE OF OKLA, TULSA COUNTY

In re: the Lorice T. Wallace Revocable        )
Trust dated December 26, 1974, as restated     )
effective October 5, 1993 and as amended       )
on February 12, 1998, the Lorice T.            )
Wallace Irrevocable Trust dated February       )
8, 1996, and the Lorice T. Wallace             )
Irrevocable Trust dated September 11,           )
1992, also known as the Lorice T. Wallace      )
Life Insurance Trust.                          )

PT - 2 0 0 2 - 5 6

## PETITION FOR INSTRUCTIONS

The Trust Company of Oklahoma, by and through its counsel of record, James C. Milton

of Doerner, Saunders, Daniel & Anderson, L.L.P., joined by Ronald J. Saffa, by and through his

counsel of record, James E. Poe of Covington & Poe, respectfully submit this Petition for

Instructions:

## GENERAL ALLEGATIONS

1.      The Petitioners, The Trust Company of Oklahoma ("Trust Company") and

Ronald J. Saffa ("Saffa"), are successor co-trustees of the Lorice T. Wallace Revocable Trust

dated December 26, 1974, as restated by the Restatement of the Lorice T. Wallace Revocable

Trust dated December 26, 1974, effective October 5, 1993 ("October 5, 1993 Restatement"), and

as amended by Amendment Number One to the Restatement of the Lorice T. Wallace Revocable

Trust dated December 26, 1974, executed on February 12, 1998 ("February 12, 1998

Amendment"). In this Petition, this trust will be referred to as "the LTW Revocable Trust." On

March 25, 2002, the District Court of Tulsa County entered a Journal Entry of Final Judgment

("March 25, 2002 Journal Entry") declaring the October 5, 1993 Restatement and the February

12, 1998 Amendment to be the controlling instruments of the LTW Revocable Trust. The March

25, 2002 Journal Entry was entered in an action styled as *Petition of Trust Company of*

*Oklahoma and Ronald J. Saffa*, Case No. PT-2000-21, in the District Court of Tulsa County,

1

State of Oklahoma ("Case No. PT-2000-21"). A true and correct copy of the March 25, 2002 Journal Entry is attached to this Petition as Exhibit "A". A true and correct copy of the October 5, 1993 Restatement is attached to this Petition as Exhibit "B". A true and correct copy of the February 12, 1998 Amendment is attached to this Petition as Exhibit "C".

2.    The Petitioners, Trust Company and Saffa, serve as successor co-trustees of the Lorice T. Wallace Irrevocable Trust dated February 8, 1996. In this Petition, this trust will be referred to as "the LTW Irrevocable Trust." The March 25, 2002 Journal Entry declared that the Trust Indenture Creating the Lorice T. Wallace Irrevocable Trust, dated February 8, 1996, attached to this Petition as Exhibit "D", is the controlling instrument of the LTW Irrevocable Trust. The March 25, 2002 Journal Entry declared that the LTW Irrevocable Trust is the general partner of the Lorice T. Wallace Family, Limited Partnership ("LTW Family, L.P.").

3.    Petitioner Trust Company serves trustee of the Lorice T. Wallace Irrevocable Trust dated September 11, 1992, also known as the Lorice T. Wallace Life Insurance Trust. In this Petition, this trust will be referred to as "The LTW Life Insurance Trust." The March 25, 2002 Journal Entry declared that the September 11, 1992 instrument entitled "The Lorice T. Wallace Irrevocable Trust," attached to this Petition as Exhibit "E", is the controlling instrument of the LTW Life Insurance Trust.

4.    On June 2, 1998, Lorice T. Wallace entered a letter agreement with Trust Company, dated May 19, 1998 ("the May 19, 1998 letter"). A true and correct copy of the May 19, 1998 letter is attached to this Petition as Exhibit "F". The March 25, 2002 Journal Entry declared that the May 19, 1998 letter "is a valid and operative instrument, and controls with respect to the conditions imposed therein by Petitioner The Trust Company of Oklahoma in accepting appointment as successor co-trustee of the Lorice T. Wallace Revocable Trust and the Lorice T. Wallace Irrevocable Trust."

2

5.    The March 25, 2002 Journal Entry declared that Trust Company and Mr. Saffa are successor co-trustees of the LTW Revocable Trust and the LTW Irrevocable Trust.

6.    The March 25, 2002 Journal Entry declared that Trust Company is trustee of the LTW Life Insurance Trust.

7.    Lorice T. Wallace ("Mrs. Wallace"), an incapacitated person, through her limited guardian of the person, Mary Roma Wallace Jage ("Ms. Jage"), is an interested party to the issues raised by this Petition for Instructions. Mrs. Wallace is the settlor of all three trusts. Mrs. Wallace is the sole vested beneficiary of the LTW Revocable Trust and the LTW Irrevocable Trust.

8.    Ms. Jage, in her individual capacity, is an interested party to the issues raised by this Petition for Instructions in that she is a vested beneficiary of the LTW Life Insurance Trust. In addition, Ms. Jage is a contingent remainder beneficiary of the LTW Revocable Trust and the LTW Irrevocable Trust.

9.    Patricia Wallace Hastings ("Ms. Hastings"), in her individual capacity, is an interested party to the issues raised by this Petition for Instructions. Ms. Hastings is a vested beneficiary of the LTW Life Insurance Trust. In addition, Ms. Hastings is a contingent remainder beneficiary of the LTW Revocable Trust and the LTW Irrevocable Trust.

10.    Ms. Hastings, as guardian of Lisa Frances Wallace, is an interested party to the issues raised by this Petition for Instructions in that Lisa Frances Wallace is a contingent remainder beneficiary of the LTW Revocable Trust.

11.    Stephen P. Wallace ("Mr. Wallace") is an interested party to the issues raised by this Petition for Instructions. Mr. Wallace is a vested beneficiary of the LTW Life Insurance Trust. In addition, Mr. Wallace is a contingent remainder beneficiary of the LTW Revocable Trust and the LTW Irrevocable Trust.

12.    All parties to this action are subject to personal jurisdiction in this Court. Venue is appropriate in this Court pursuant to specific statute. The Court has subject matter jurisdiction pursuant to Okla. Stat. tit. 60, § 175.23 and Okla. Const. art. VII, § 7.

### NATURE OF DISPUTES GIVING RISE TO THIS PETITION

13.    The trusts that are the subject of this Petition for Instructions were also the subject of a prior action in which Trust Company and Mr. Saffa sought and obtained instructions regarding these trusts. The prior action resulted in the March 25, 2002 Journal Entry.

14.    Subsequent to the entry of the March 25, 2002 Journal Entry, further disputes have developed among the beneficiaries and between the beneficiaries and the trustees. These disputes require judicial resolution pursuant to Okla. Stat. tit. 60, § 175.23.

15.    Specifically, on August 8, 2002, Ms. Jage delivered a letter ("the August 8, 2002 letter") to Trust Company and Mr. Saffa, purporting to terminate Trust Company and Mr. Saffa as trustees of the subject trusts, despite the fact that Ms. Jage lacks authority to remove Trust Company and Mr. Saffa with respect to the LTW Irrevocable Trust and the LTW Life Insurance Trust. The August 8, 2002 letter purported to appoint Bank of Oklahoma as trustee of the subject trusts. A true and correct copy of the August 8, 2002 letter is attached as Exhibit "G".

16.    By letter dated August 12, 2002 ("the August 12, 2002 letter"), Bank of Oklahoma declined to serve as trustee of the subject trusts. A true and correct copy of the August 12, 2002 letter is attached as Exhibit "H".

17.    On August 16, 2002, Mr. Wallace and Ms. Jage filed a Petition ("the August 16, 2002 Petition") against Trust Company and Mr. Wallace, in Case No. CJ-2002-04727, in the District Court of Tulsa County, State of Oklahoma. A true and correct copy of the August 16, 2002 Petition is attached as Exhibit "I".

4

18.    In the August 16, 2002 Petition, Mr. Wallace and Ms. Jage raise allegations that have been resolved by other courts, in other lawsuits. For example, in their August 16, 2002 Petition, Mr. Wallace and Ms. Jage challenge the disposition of real properties owned by the LTW Family, L.P., despite the fact that the dispositions were approved by the District Court in Case No. PT-2000-21.

19.    Furthermore, in the August 16, 2002 Petition, Mr. Wallace alleges that he has been provided insufficient information in response to his demands for information regarding the LTW Family, L.P., despite the fact that the issue of Trust Company's provision of information regarding the LTW Family, L.P. has previously been presented to the District Court in Case No. PT-2000-21 as well as the United States Bankruptcy Court for the Northern District of Oklahoma in *In re Stephen P. Wallace*, Case No. 02-00073-M.

20.    Furthermore, in the August 16, 2002 Petition, Mr. Wallace and Ms. Jage allege that a "history of litigation" "conferred no benefit" on the subject trusts, despite the fact that Ms. Jage joined Trust Company and Mr. Saffa in their requests for relief in Case No. PT-2000-21.

21.    Furthermore, in the August 16, 2002 Petition, Mr. Wallace and Ms. Jage challenge provisions of the controlling instruments of the trusts and the May 19, 1998 letter, authorizing the payment of attorney fees expended on behalf of the trustees.    This challenge appears to be an attack on the validity of the controlling instruments that were judicially determined by the District Court of Tulsa County in the March 25, 2002 Journal Entry.  As a result, Trust Company and Mr. Saffa will require instructions from the Court regarding whether this challenge invokes the requirements of the no-contest provisions of the controlling instruments of the LTW Revocable Trust and the LTW Irrevocable Trust.  Furthermore, this challenge has already been resolved in prior litigation because the validity of the controlling instruments and the May 19, 1998 letter was conclusively resolved by the March 25, 2002

Journal Entry. Furthermore, Ms. Jage joined Trust Company and Mr. Saffa in their requests for shifting of the expense of the attorney fees to Mr. Wallace's share of the LTW Revocable Trust. Ms. Jage reviewed attorney-fee billing statements during the course of litigation in Case No. PT-2000-21, pointing out typographical errors in the billing statements, but failed to raise a challenge to the authority of Trust Company and Mr. Saffa to pay such attorney fees as trustees of the trusts. Finally, Mr. Wallace challenged the expenditure of attorney fees pursuant to the controlling instruments and the May 19, 1998 letter during the litigation in Case No. PT-2000-21, but dismissed all of his claims in that litigation on the eve of trial.

22.    Trust Company and Mr. Saffa continue to incur attorney fees in their capacity as trustees of the subject trusts. Due to the challenge contained in the August 16, 2002 Petition, Trust Company and Mr. Saffa request that the Court provide instructions regarding an appropriate procedure for payment of all accrued and future attorney fees incurred by the trustees.

23.    In addition, Trust Company and Mr. Saffa have received an application filed in Case No. PT-2000-21 by Ms. Jage's prior attorneys, Boone, Smith, Davis, Hurst & Dickman ("Boone Smith"), requesting compensation for attorney fees incurred in representation of Ms. Jage. Mr. Wallace has objected to the application. Among other arguments, Mr. Wallace argues that the District Court of Tulsa County in Case No. PT-2000-21 has no jurisdiction to address the application by Boone Smith. Boone Smith has filed a notice of attorney's lien, seeking to attach to disbursements to Ms. Jage. Trust Company and Mr. Saffa have been ordered to make regular disbursements to Ms. Jage as compensation for Ms. Jage's service as limited guardian of the person of Lorice T. Wallace. As a result, Trust Company and Mr. Saffa require instructions regarding the proper method of resolving the dispute regarding compensation to Boone Smith and Ms. Jage.

24.    Furthermore, in the August 16, 2002 Petition, Mr. Wallace and Ms. Jage allege that Trust Company and Mr. Saffa "persuaded Lorice T. Wallace to restrict a portion of a gift that Lorice T. Wallace wanted to make equally to her children," by restricting Mr. Wallace's "share of the gift" "to reimbursement of mental health expenses." This claim has been resolved in prior litigation because testimony was taken by Mr. Wallace's own attorney, on examination of Lorice T. Wallace in her guardianship proceeding, regarding Mrs. Wallace's decision to impose the restriction on her gift to Mr. Wallace. Furthermore, in her capacity as limited guardian of the person of Mrs. Wallace, Ms. Jage directed Trust Company to notify Mr. Wallace of the availability of the gift with the imposed restriction. Finally, the challenge is moot because, in her capacity as limited guardian of the person of Mrs. Wallace, Ms. Jage subsequently directed Trust Company to lift the restriction on the gift to Mr. Wallace, resulting in the payment of the gift funds to Mr. Wallace.

25.    Furthermore, in the August 16, 2002 Petition, Mr. Wallace and Ms. Jage request that Trust Company and Mr. Saffa be disqualified from serving as trustees of the subject trusts for various reasons. This claim has been resolved in prior litigation because, in Case No. PT-2000-21, Mr. Wallace requested the same relief but dismissed his claims on the eve of trial.

26.    Furthermore, in the August 16, 2002 Petition, Mr. Wallace and Ms. Jage request a certified audit of the subject trusts, despite the fact that Mr. Wallace has repeatedly requested such a "certified audit" in multiple pleadings filed in multiple courts without a single court directing such relief in his favor.

27.    Trust Company and Mr. Saffa require instructions regarding whether attorney fees incurred in connection with their defense against the August 16, 2002 Petition invoke the fee-shifting provisions identified in paragraphs 13 and 14, page 3, of the March 25, 2002 Journal Entry, and if so, how such attorney fees should be allocated.

7

contained in the August 21, 2002 letter are directly inconsistent with the controlling instruments that were judicially determined by the District Court of Tulsa County in the March 25, 2002 Journal Entry, and may amount to an attack on the validity of the instruments. As a result, Trust Company and Mr. Saffa will require instructions from the Court regarding whether the August 21, 2002 letter invokes the requirements of the no-contest provisions of the controlling instruments of the LTW Revocable Trust and the LTW Irrevocable Trust.

30.    On August 23, 2002, Ms. Jage delivered another letter to Trust Company and Mr. Saffa ("the August 23, 2002 letter"). A true and correct copy of the August 23, 2002 letter is attached to this Petition for Instructions as Exhibit "L". In the August 23, 2002 letter, Ms. Jage again purported to remove Trust Company and Mr. Saffa as trustees of the LTW Revocable Trust. Furthermore, Ms. Jage requested Trust Company and Mr. Saffa to resign as trustees of the LTW Irrevocable Trust and the LTW Life Insurance Trust. Ms. Jage identified Heritage Trust Company as the successor trustee of the subject trusts. Trust Company has since learned from Robert L. Mitchell, one of the attorneys working for Mr. Wallace, that Heritage Trust Company has indicated an intention to decline to serve as trustee of the subject trusts.

31.    In the August 23, 2002 letter, Ms. Jage suggested or requested that Trust Company and Mr. Saffa provide Mr. Wallace with the records of the subject trusts. Prior to the August 23, 2002 letter, Ms. Jage had made no such request as limited guardian of the person of Mrs. Wallace. Trust Company requires the Court's instructions regarding whether the requested records of the subject trusts should be made available to Mr. Wallace pursuant to Ms. Jage's apparent direction.

32.    Prior to the entry of the March 25, 2002 Journal Entry, Mr. Wallace exhibited a tendency to represent himself as trustee of the subject trusts and the LTW Family, L.P., in an apparent effort to accomplish a "self help" removal of Trust Company and Mr. Saffa as trustees

of the subject trusts. This tendency caused Trust Company and Mr. Saffa to be concerned that Mr. Wallace should not be provided with information regarding the assets of the subject trusts, particularly in light of the provisions of the controlling documents that provided no right of inspection to Mr. Wallace, as a contingent remainder beneficiary of the LTW Revocable Trust and the LTW Irrevocable Trust. Now that the March 25, 2002 Journal Entry has been entered, the risk of such wrongful conduct by Mr. Wallace may be diminished. Furthermore, the March 25, 2002 Journal Entry would be supportive of a further order restraining Mr. Wallace from taking any such "self help" actions or otherwise misusing the records of the subject trusts.

33.    Thus, with the imposition of appropriate restrictions on Mr. Wallace's conduct, Trust Company and Mr. Saffa believe that provision of records of the subject trusts to Mr. Wallace could be accomplished pursuant to Ms. Jage's direction.

34.    Furthermore, Trust Company and Mr. Saffa have received a request by Patrick J. Malloy III, the Chapter 7 bankruptcy trustee of the bankruptcy estate of Stephen P. Wallace, for access to the records of the subject trusts. Trust Company requires the Court's instructions regarding whether the requested records of the subject trusts should be made available to Mr. Wallace pursuant to Ms. Jage's apparent direction.

35.    Trust Company and Mr. Saffa believe that Mr. Malloy's request for access to the records of the subject trusts is in connection with Mr. Malloy's evaluation of the many claims asserted by Mr. Wallace against Trust Company and Mr. Saffa. As bankruptcy trustee, Mr. Malloy is charged with evaluating and disposing of such claims. Trust Company and Mr. Saffa believe that such disclosure would be in the best interest of the subject trusts because the disclosure will have the effect of resolving many of the claims that Mr. Wallace has asserted against the trustees.

36.     Furthermore, in order to provide for an orderly resolution of future disputes of a similar nature, the Petitioners seek, with this Petition for Instructions, an order from the Court retaining continuing jurisdiction over the administration of the trusts.

## REQUESTED RELIEF

37.     For the above reasons, the Petitioners respectfully request instructions regarding and a declaratory judgment determining the effect of the August 8, 2002 letter.

38.     The Petitioners further request instructions regarding and a declaratory judgment resolving the claims asserted by Mr. Wallace and Ms. Jage in their August 16, 2002 Petition.

39.     The Petitioners further request instructions regarding and a declaratory judgment determining whether the August 16, 2002 Petition or claims contained therein invoke the requirements of the no-contest provisions of the controlling instruments of the LTW Revocable Trust and the LTW Irrevocable Trust.

40.     The Petitioners further request instructions regarding and a declaratory judgment determining an appropriate procedure for payment of all accrued and future attorney fees incurred by the trustees.

41.     The Petitioners further request instructions regarding and a declaratory judgment determining whether Trust Company should pay the fee request by Ms. Jage's prior attorneys, Boone, Smith, Davis, Hurst & Dickman, and determining the impact of an attorney's-lien notice filed by Boone Smith.

42.     The Petitioners further request instructions regarding and a declaratory judgment determining the effect of the Wallace Family Declaration of Independence.

43.     The Petitioners further request instructions regarding and a declaratory judgment determining whether the Wallace Family Declaration of Independence or statements contained

therein invoke the requirements of the no-contest provisions of the controlling instruments of the LTW Revocable Trust and the LTW Irrevocable Trust.

44.    The Petitioners further request instructions regarding and a declaratory judgment determining the effect of the August 21, 2002 letter.

45.    The Petitioners further request instructions regarding and a declaratory judgment determining whether the August 21, 2002 letter or statements contained therein invoke the requirements of the no-contest provisions of the controlling instruments of the LTW Revocable Trust and the LTW Irrevocable Trust.

46.    The Petitioners further request instructions regarding and a declaratory judgment determining the effect of the August 23, 2002 letter.

47.    The Petitioners further request instructions regarding and a declaratory judgment determining whether the records of the LTW Revocable Trust and the LTW Irrevocable Trust should be made available to Mr. Wallace pursuant to Ms. Jage's apparent direction.

48.    The Petitioners further request instructions regarding and a declaratory judgment determining appropriate restrictions to place on Mr. Wallace's use of the records of the LTW Revocable Trust and the LTW Irrevocable Trust.

49.    The Petitioners further request instructions regarding and a declaratory judgment determining whether the records of the LTW Revocable Trust and the LTW Irrevocable Trust should be made available to Patrick J. Malloy III, as Chapter 7 bankruptcy trustee of the bankruptcy estate of Stephen P. Wallace.

50.    The Petitioners further request that the Court accept continuing jurisdiction and supervision of the administration of the LTW Revocable Trust, the LTW Irrevocable Trust, and the LTW Life Insurance Trust for the purpose of providing an orderly resolution of future disputes of the nature set forth above, or similar nature.

51.    For the foregoing reasons, the Petitioners seek instructions and directions of the Court as to their duties and responsibilities under and in accordance with the various trust instruments governing the LTW Revocable Trust, the LTW Irrevocable Trust, and the LTW Life Insurance Trust, and further request continuing jurisdiction and supervision of the administration of said trusts pursuant to Okla. Stat. tit. 60, § 175.23.

Respectfully submitted,

DOERNER, SAUNDERS, DANIEL & ANDERSON, L.L.P.

By:

James C. Milton, OBA No. 16697
320 South Boston Ave., Ste. 500
Tulsa, Oklahoma  74103-3725
918-582-1211; fax 918-591-5362

Attorneys for Petitioner The Trust Company of Oklahoma

James E. Poe, OBA No. 7198
COVINGTON & POE
111 West 5th, Ste. 740
Tulsa, Oklahoma  74103
918-585-5537

Attorneys for Petitioner Ronald J. Saffa

10.    The document identified at trial as Petitioners' Joint Exhibit 18 is the controlling instrument of the Lorice T. Wallace Irrevocable Trust.

11.    The document identified at trial as Petitioners' Joint Exhibit 38 is a valid and operative instrument, and controls with respect to the conditions imposed therein by Petitioner The Trust Company of Oklahoma in accepting appointment as successor co-trustee of the Lorice T. Wallace Revocable Trust and the Lorice T. Wallace Irrevocable Trust.

12.    The Court declines to find that Respondent Stephen P. Wallace has violated the no-contest or forfeiture provisions of the controlling instruments of the Lorice T. Wallace Revocable Trust, the Lorice T. Wallace Irrevocable Trust, or the Lorice T. Wallace Life Insurance Trust.

13.    The fee-shifting provision contained in Petitioners' Joint Exhibit 16 is enforceable, as more fully set forth in the transcript of the Court's ruling from the bench.

14.    The fee-shifting provision contained in Petitioners' Joint Exhibit 38 is enforceable, as more fully set forth in the transcript of the Court's ruling from the bench.

15.    The parties may present further evidence on the loss, damage, legal fees, or other costs that should be charged against Respondent Stephen P. Wallace's interests in the Lorice T. Wallace Revocable Trust, the Lorice T. Wallace Irrevocable Trust, or the Lorice T. Wallace Family, Limited Partnership, pursuant to these fee-shifting provisions.

16.    Such further evidence shall be presented to the Court in the form of fee applications, to be filed with the Court no later than April 26, 2002.

17. Mr. Wallace's Motion of 3/19/02 for Stay of Journal Entry of Judgment in PT-2000-21 is denied.

IT IS SO ORDERED.

Dated this __25th__ day of __March__, 2002.

_____
DISTRICT JUDGE GREGORY K. FRIZZELL

3

10/5/93

EXHIBIT _A_

# RESTATEMENT OF
# TRUST AGREEMENT

Between

## LORICE T. WALLACE

Grantor

and

## LORICE T. WALLACE

Trustee

Restatement of the

**THE LORICE T. WALLACE REVOCABLE TRUST**
Dated December 26, 1974

Effective Date of Restatement:  October 5, 1993

Prepared by:

Ronald J. Saffa
Morrel, West, Saffa, Craige & Hicks, Inc.
Attorneys at Law
5310 East 31st Street
Suite 900, City Plaza West
Tulsa, Oklahoma  74135
(918)  664-0800

EXHIBIT _B_

EXHIBIT
15

TRUST  736

# TRUST AGREEMENT

**THIS AGREEMENT**, hereby made and entered into this 5th day of October, 1993, by and between LORICE T. WALLACE, hereinafter referred to as "Grantor", and LORICE T. WALLACE, hereinafter referred to as "Trustee":

## W I T N E S S E T H :

**WHEREAS**, the Grantor heretofore established a Trust effective December 26, 1974, (hereinafter called the "Effective Date") known as THE LORICE T. WALLACE REVOCABLE TRUST (herein referred to as the "instrument"); and

**WHEREAS**, under the terms of the instrument, the Grantor has the ability to amend the instrument.

**NOW, THEREFORE**, effective October 5, 1993, except as otherwise provided, Grantor and the Trustee in accordance with the provisions of the instrument pertaining to amendments thereof, hereby amend the instrument in its entirety and restate the instrument to provide as follows:

## ARTICLE 1

### INTRODUCTORY PROVISIONS

1.01.  Contents.  This instrument is divided into thirteen (13) Articles beginning with this Article.

1.02.  Title.  This instrument shall be known as THE LORICE T. WALLACE REVOCABLE TRUST (hereinafter referred to as the "Trust") for all purposes.

1.03.  Identification and Survivorship Presumptions.  The following references shall be used in the instrument:

    A.    Grantor hereby declares that she is single.

    B.    The Grantor's children born of a previous marriage, are STEPHEN PAUL WALLACE, MARY ROMA WALLACE JAGE, PATRICIA WALLACE HASTINGS and LISA FRANCES WALLACE.

1

# TABLE OF CONTENTS

ARTICLE 1: INTRODUCTORY PROVISIONS

    .01    Contents
    .02    Title
    .03    Identification and Survivorship Presumptions
    .04    Local Law

ARTICLE 2: AMENDMENT and REVOCATION of TRUST

    .01    Amendment and Revocation
    .02    Rights Personal

ARTICLE 3: RIGHTS RESERVED BY THE GRANTOR OF THE TRUST

    .01    Additions By Grantor
    .02    Additions By Others
    .03    Life Insurance
    .04    Successor Trustee
    .05    Removal of Trustee
    .06    Trusteeship Vacant
    .07    Transactions With Others
    .08    Payment of Taxes and Other Expenses

ARTICLE 4: DISTRIBUTION OF INCOME AND PRINCIPAL

    .01    Distribution During Grantor's Lifetime

ARTICLE 5: TERMINATION OF TRUST

ARTICLE 6: MINORITY AND INCAPACITY OF BENEFICIARIES

    .01    Minor Beneficiaries
    .02    Making Trust Distributions
    .03    Institutionalized Beneficiaries

ARTICLE 7: POWERS OF THE TRUSTEE

    .01    In General
    .02    Principal and Income
    .03    Trust Unfunded
    .04    Use of Agency Accounts
    .05    Consolidation of Trust Shares
    .06    Provisions of Trust Control
    .07    Tax Elections
    .08    Division of Duties Between Co-Trustees

.09     Ancillary Proceedings
.10     Fiduciary Capacity
.11     Liability of Trustee

ARTICLE 8:   COMPENSATION OF THE TRUSTEE

.01     Reasonable Fees
.02     Expense Reimbursement

ARTICLE 9:   SUCCESSOR TRUSTEES

.01     Default of Prior Trustee
.02     Merger
.03     Trustee's Account Upon Removal
.04     Continuity
.05     Resignation
.06     Ineligibility to Serve as Trustee
.07     Incapacity of Individual Trustee
.08     Co-Trustee Ceases to Serve

ARTICLE 10:   ACCOUNTS AND STATEMENTS

.01     Regular Reports to Beneficiaries
.02     Inspection
.03     Final Account

ARTICLE 11:   DEFINITIONS AND MISCELLANEOUS PROVISIONS

.01     Definitions
.02     Pronouns
.03     Applicable Law
.04     Captions
.05     Invalid Provisions
.06     Agreement Binding on Estates and Successors
.07     Death of a Beneficiary
.08     Trustee to Serve Without Bond or Court Supervision
.09     Certified Copies
.10     Transactions With Trustee
.11     Education
.12     Perpetuities Provision

ARTICLE 12:   SPENDTHRIFT AND SEPARATE PROPERTY PROVISIONS

.01   Separate Property
.02   Spendthrift

ARTICLE 13:   EXECUTION

C.  Grantor has no other child or children, natural or adopted, and no child or children of a deceased child or children, natural or adopted. STEPHEN PAUL WALLACE, MARY ROMA WALLACE JAGE and PATRICIA WALLACE HASTINGS are referred to herein as my "children". The word "children" shall not be construed to include LISA FRANCES WALLACE. Grantor has made other provisions for LISA FRANCES WALLACE under the terms of this Trust.

Grantor intentionally omits any provisions for any persons for whom no provisions have been made in this Trust. This intention to omit specifically includes, but is not limited to, any child and the issue of any deceased child. It is Grantor's intent that her property shall be distributed as provided in this Trust and to no others.

If any person shall, in any manner, directly or indirectly, contest the validity of this Trust, or any part thereof, that person or persons shall take nothing from this Trust and distribution shall be made as though that person or persons did not exist.

D.  The words "lineal descendants" and other words of similar import, as used herein, shall be construed to include not only such children but also the lineal descendants of such children, whether born prior to or after execution of this instrument. The subsequent adoption of a child by a lineal descendant of the Grantor, whether such lineal descendant be by birth or adoption shall not cause such lineal descendant to be excluded from the class of persons who are described herein as the Grantor's lineal descendants. A child conceived but yet unborn shall be regarded for purposes of this instrument as though such child were then living, but only if such child survives birth.

E.  For the purposes of this Trust, a person shall not be deemed to survive Grantor's death if such person dies within thirty (30) days of Grantor's death. Also, for purposes of this Trust, if any person's claim to a share of the Trust Estate is dependent upon his surviving another person, the claimant shall not be deemed to survive that other person if the claimant dies within thirty (30) days of that other person.

1.04.  Local Law.  All references to "local law" shall refer to the legislative enactments of the State of Oklahoma.

2

TRUST 740

## ARTICLE 2

## AMENDMENT AND REVOCATION OF TRUST

2.01. <u>Amendment and Revocation</u>. Grantor may, during her lifetime, revoke, terminate, amend or modify this Trust in whole or in part. Any permitted amendment, modification, revocation or termination shall be exercised by written <u>inter vivos</u> instrument (and not by Will) which shall be effective immediately upon delivery to the Trustee, except that changes with respect to the Trustee's duties, liabilities, or compensation shall not be effective without the Trustee's written consent.

Upon revocation of the Trust, the Trustee shall promptly pay or transfer to the Grantor exercising such power of revocation, or to Grantor's designee, such portion or all of the Separate Estate of such person as he or she shall demand.

Upon the death of Grantor, this Trust shall become irrevocable and may not thereafter be amended, modified, revoked, or terminated except as provided herein.

2.02. <u>Rights Personal</u>. This right of revocation and all other rights reserved herein to Grantor and the rights given to other persons by this instrument are personal to the person to whom they are reserved or given and may not be exercised by a legal guardian, conservator, attorney-in-fact, or other personal representative, except as provided herein.

## ARTICLE 3

## RIGHTS RESERVED BY THE GRANTOR OF THE TRUST

3.01. <u>Additions by Grantor</u>. Grantor reserves the right during Grantor's lifetime to add money or other property, real or personal, to the Trust Estate, or to any particular fund, share or portion thereof held hereunder by instruments, or to add such property by the terms of the Last Will and Testament of Grantor.

3.02. <u>Additions by Others</u>. Grantor also reserves to any other person (including Trustees of other Trusts) the right, from time to time, whether before or after Grantor's death, to add money or other property, both real or personal, to the Trust Estate, or to any particular fund, share or portion thereof, either by Last Will and Testament, or with the consent of the Trustee by <u>inter vivos</u> transfer, such property to be thereafter held, managed, and disposed of in accordance with the terms and provisions of this instrument.

3.03. <u>Life Insurance</u>. The Grantor retains during Grantor's lifetime all rights under the insurance policies payable to the Trustee, including the right to change the beneficiaries, and the Grantor may assign any policies to any lender, including any Trustee, as security for any loan. The rights of the assignee of any policy shall be superior to the rights of the Trustee. If any

3

policy is surrendered, or if the beneficiary of any policy is changed, this Trust shall be revoked with respect to them, but no such revocation shall be effective unless the surrender or change of beneficiary of the policy is accepted by the insurance company.

3.04. <u>Successor Trustee</u>. After the death of the Grantor, or in the event Grantor becomes incapacitated, mentally or physically, RONALD J. SAFFA and THE TRUST COMPANY OF OKLAHOMA shall serve as Trustees. In the event said RONALD J. SAFFA fails to qualify or ceases to serve for any reason, I nominate and appoint the TRUST COMPANY OF OKLAHOMA OF TULSA as sole Trustee to serve without bond.

3.05. <u>Removal of Trustee</u>. Any Trustee may be removed as a trustee of any Trust created hereunder by a 75% majority in interest of those beneficiaries entitled to receive distributions of income from the Trust as to which removal is sought regardless of whether such income distributions are absolute or in the discretion of the Trustee. The right of removal may be exercised by adult beneficiaries, by the legally appointed guardians of the person of any beneficiaries who may not have attained the age of majority at the time of exercise of the right of removal or by the legally appointed guardians or conservators of any adult beneficiaries. Such removal may be with or without cause and without necessity of court proceedings upon giving thirty (30) days written notice to such Trustee, and upon the succession to office of a successor Trustee. The successor Trustee shall either be a Trust company or a national banking association with trust powers which shall have been qualified to engage in the trust business for at least five (5) years immediately prior to such appointment and which shall have administered trust assets of at least TWO HUNDRED MILLION DOLLARS ($200,000,000.00) or more, and which neither the Grantor nor any beneficiary hereof owns at the time of such appointment, directly or indirectly, in excess of five percent (5%) of the value of the stock of such trust company or national banking association.

3.06. <u>Trusteeship Vacant</u>. If the Trusteeship shall become vacant for any reason and the vacancy is not filled pursuant to another provision in this instrument, the Successor Trustee shall be a corporation administering trust assets of at least TWO HUNDRED MILLION DOLLARS ($200,000.00) or more, authorized under the laws of the United States or of any State, to administer Trusts, and agreed upon and approved by the beneficiaries at the time of appointment, of at least a majority of the current income. In the event any or all of the beneficiaries are minors, said power shall be executed by his or her legal or natural guardian.

3.07. <u>Transactions With Others</u>. The Trustee is specifically authorized to enter into any transaction on behalf of any Trust created herein with (a) the Executor or Administrator of the estate of the Grantor; (b) the Trustee of any other Trust created by the Grantor during his or her lifetime or as a part of Grantor's Last Will and Testament; (c) any business corporation or trust controlled by any beneficiary or Trustee under this instrument of which any such beneficiary or Trustee, or any director, officer, or employee of any corporate Trustee, is also a director, officer, or employee; or (d) any beneficiary or Trustee under this instrument acting individually. In any such transaction, the Trustee is authorized to sell or purchase any item of property, and to lend funds upon such terms, at such rates of interest, upon such security, and for such times as the

4

TRUST 742

Trustee in the Trustee's absolute discretion may deem proper; and to retain any property or Note with the same freedom as if it had been an original part of the Trust Estate.

3.08.  Payment of Taxes and Other Expenses.  The Trustee, in the Trustee's sole discretion, may pay from the Trust Estate all or any portion of any legacy, succession, inheritance, transfer, estate and other death tax or duty or any one or more of them, levied or assessed against the estate of the Grantor, if there be more than one (including any and all interest and penalties thereon).  In addition, to the extent that the Trustee, in the Trustee's sole discretion, deems it advisable for the best interests of Grantor's family as a whole, the Trustee may pay all or a portion of the following expenses arising out of the death of the Grantor:

    A. Funeral expenses;

    B. Claims allowed against each such estate; and

    C. Expenses of administering each such estate.

However, the Trustee has no legal obligation to make any of the payments described in this Paragraph.  Moreover, to the extent United States Treasury Bonds redeemable at par in payment of Federal estate taxes are available to the Executor or Administrator of the estate of a person eligible for distributions under this Paragraph, then before any payments are made pursuant to this Paragraph for such purpose, so much of such tax must be first paid by the use of such bonds.

Furthermore, none of the payments authorized here may be made from any distribution or the proceeds thereof received from any pension, profit-sharing or other plan or trust fund qualified under Sections 401 and 501 of the Internal Revenue Code of 1954, as amended, or corresponding provisions of applicable revenue laws, for special tax treatment or from any death benefits paid by an employer and not includable in the employee's gross estate.

Nor may any of the assets described in the preceding sentence be used to benefit the estate of the employee in any way whatever, including but not limited to the ways described above, but such assets shall be segregated until such time as all of the death taxes on the employee's estate are paid in full so that under no circumstances may such assets be used for the payment of such death taxes, nor  may any debts of the employee, administration expenses of the employee's estate, or any of the employee's funeral expenses be paid therefrom.

Payments permitted by this Paragraph for the benefit of the estate of the Grantor may be made to Grantor's estate or directly to those to whom Grantor's estate is indebted and the Trustee may rely exclusively upon the written representations of Grantor's Executor regarding the amounts due and the identity of those persons entitled to such payments.

The payments made pursuant to this Paragraph shall be charged to that portion of the property allocated to the Trust which is includable in the gross estate of the person for whose

5

TRUST 743

benefit the payments were made without apportionment or charge against any beneficiary of the Trust Estate.

## ARTICLE 4

## DISTRIBUTION OF INCOME AND PRINCIPAL

4.01. <u>Distribution During Grantor's Lifetime</u>. While the Grantor is living, whenever the Trust Estate consists of property other than life insurance policies, the Trust Estate shall be held, managed and distributed as follows:

> During the lifetime of Grantor, Trustee shall distribute so much of the income and/or corpus, as Grantor shall direct, to Grantor. If Grantor is unable to direct distribution, Trustee is directed, in Trustee's sole discretion, to distribute so much of the income and/or corpus as is necessary for the maintenance, care, support, comfort, happiness, welfare, and the medical care of Grantor, taking into consideration other assets of Grantor and the standard of living to which Grantor has been accustomed.

## ARTICLE 5

## <u>TERMINATION OF TRUST</u>

5.01. Upon the death of the Grantor, the Trust Estate shall be held and disposed of as follows:

> A.     The Trustee or Trustees shall distribute the sum of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) to HOLY ANGELS SCHOOL CHARITABLE ENDOWMENT FUND in the City of Shreveport, Louisiana.

> B.     In the event that Grantor's daughter, LISA FRANCES WALLACE, survives the Grantor, the Trustee shall set aside the sum of FOUR HUNDRED THOUSAND DOLLARS ($400,000.00) for her use and benefit. If LISA FRANCES WALLACE fails to survive the Grantor, or upon her subsequent death, any and all monies remaining in said fund shall be divided, in equal shares, among Grantor's children, to be held and disposed of pursuant to paragraph D of this Section 5.01. It is the intention that the Trustee use its discretion in the disbursement of funds from this Trust to satisfy those non-medical needs. This Trust shall not displace any source of income otherwise available to LISA FRANCIS WALLACE for her basic support (such as food and shelter), including any

6

governmental assistance program to which the beneficiary is or may be entitled. This Trust is not intended to be a resource of LISA FRANCES WALLACE. It is intended to be a discretionary spendthrift Trust created for non-support purposes. No part of the corpus of this Trust shall be used to supplant or replace any public assistance benefits received by or through any county, state, federal or other governmental agency.

To the extent that the benefits are not made available to LISA FRANCES WALLACE for other than basic living expenses, including food and shelter, the Trustee may disburse income and principal from the Trust estate to or for the benefit of LISA FRANCES WALLACE'S needs other than for her basic support and medical needs. The primary purpose of this Trust is to furnish LISA FRANCES WALLACE during her lifetime with the non-medical equipment, care, education, training, rehabilitation, entertainment, transportation or assistance which she will need to assure her of as natural and pleasant life as is possible in her condition. The Trustee may in its discretion provide medical care only if LISA FRANCES WALLACE ceases to or does not for any reason, qualify for such under any medical assistance program. The Trustee's discretion is absolute, full and complete with regard to disbursements from the Trust estate, and shall be binding on all interested persons.

Grantor respectfully requests that visitation rights to LISA FRANCES WALLACE be determined by PATRICIA WALLACE HASTINGS and MARY ROMA WALLACE JAGE.

C.    Upon the death of Grantor, or as soon thereafter as is practicable, there shall be distributed to the Trustee appointed and acting as Trustee, immediately following the death of Grantor, the items listed in a letter dated from time to time, addressed to the Trustee of this Trust; said items to be distributed by said Trustee in accordance with the terms of said letter. The remainder of Grantor's household furniture, furnishings, ornaments, books, and all other articles of a household nature, all personal wearing apparel and jewelry, automobiles and personal use accessories not otherwise effectively disposed of distributed to Grantor's children, in equal shares, without restriction; provided, however, should any of my children fail to survive Grantor, then and in such event, such deceased child's share shall be distributed *per stirpes* to her surviving issue, if any.

D.    The Trustee shall divide the remaining Trust Estate so that there is one Trust for each of the Grantor's children then living and one Trust for each of Grantor's deceased children who have then living lineal descendants. The Trusts shall be held and disposed of as follows:

7

1.  For each Trust set aside for a living child:

    a.  The Trustee shall pay all of the net income of the separate Trusts to the respective beneficiaries thereof at least as often as quarter-annually.

    b.  Whenever the Trustee determine that the income of any said child of the Grantor from all sources known to the Trustee is not sufficient for said child's health, maintenance, support and education and that of his or her immediate family, the Trustee may pay to him or her, or use for his or her benefit, so much of the principal of his or her Trust as the Trustee determines to be required for those purposes.

    c.  Whenever any of the Grantor's said children for whom a Trust has been apportioned shall attain the age of fifty (50) years, such beneficiary may at any time, by written request to the Trustee, withdraw up to one-third (1/3) of the principal of such Trust. Upon attaining the age of fifty-five (55) years, such beneficiary may at any time, by written request to the Trustee, withdraw up to an additional one-third (1/3) of the principal of such Trust. Upon attaining the age of sixty (60) years, such beneficiary may at any time, by written request to the Trustee, withdraw up to the entire balance of the principal of such Trust. The Trustee or Trustees can delay the distribution of any assets if the assets consist of real property and the Trustee determines the property should be sold and the proceeds be distributed to the beneficiaries rather than an undivided interest in real estate. The Trustee or Trustees shall have reasonable time to sell the property.

    d.  Each share set aside for a deceased child shall be distributed to that child's then living lineal descendants *per stirpes*, pursuant to the terms and provisions of Section 5.03 of this instrument.

5.02.  Upon the death of a child after a Separate Trust has been established pursuant to Section 5.01, the Trustees shall distribute said deceased child's Trust, as then constituted, as follows:

    A.  To said deceased child's then living lineal descendants, pursuant to Section 5.03;

    B.  If there are no persons who can qualify under 5.02. A, to the Grantor's other said children, pursuant to Section 5.01.D.

8

TRUST 746

5.03. Each share set aside for a deceased child shall be continued in Trust for the benefit of or distributed to that child's then living lineal descendants *per stirpes*, in the following manner:

A.   The Trustees shall pay all of the net income of said separate Trusts to the indicated beneficiaries thereof, at least as often as quarter-annually.

B.   Whenever the Trustees determine that the income of such beneficiary, from all sources known to the Trustees, is not sufficient for said child's health, maintenance, support and education and that of his or her immediate family, the Trustees may pay to him or her, or use for his or her benefit, so much of the principal of his or her Trust as the Trustees determine to be required for those purposes.

C.   Whenever such beneficiary shall attain the age of twenty-five (25) years, said beneficiary may at any time, by written request to the Trustees, withdraw up to one-third (1/3) of the principal of such Trust. Upon attaining the age of thirty (30) years, said beneficiary may at any time, by written request to the Trustees, withdraw up to an additional one-third (1/3) of the principal of such Trust. Upon attaining the age of thirty-five (35) years, said beneficiary may at any time, by written request to the Trustees, withdraw up to the entire balance of the principal of such Trust.

5.04. Upon the death of a grandchild (beneficiary) after a Separate Trust has been established pursuant to Section 5.03, the principal and undistributed income shall be used to pay any Federal and State estate or inheritance taxes due by reason of the inclusion of such Trust in the taxable estate of such beneficiary, and the balance shall be distributed, or continued in Trust pursuant to paragraph 6.01, to the heirs at law of such beneficiary as though such beneficiary had died single and intestate under the laws of the State of Oklahoma on the date of such beneficiary's death. If there are no persons who can qualify under this provision, then to Grantor's other grandchildren pursuant to section 5.03.

5.05. In the event no person survives the Grantor who can qualify as a beneficiary under the terms of the above provisions relating to this Trust, or in the event such beneficiary survives but dies prior to the time distribution of his or her share of the Trust is made, leaving no individual surviving who can qualify as beneficiary under the terms of the provisions relating to this Trust, then this Trust shall terminate and all of the assets of said Trust, including any accumulated, undistributed income thereof, shall be distributed to the heirs-at-law of the Grantor, as determined under the Statutes of Descent and Distribution of the State of Oklahoma then in effect.

5.06. Notwithstanding any other provision to the contrary, if at any time after the death of the Grantor there is in existence a Trust created by the Grantor for the benefit of the Grantor's lineal descendants which contains terms and conditions substantially identical to those set forth herein, the Trustees may add (pour over) the property then comprising the Trust Estate to that

9

Trust to be held, managed and disposed of as an integral part of that Trust, or, alternatively, merge the Trusts. The decision of the Trustees shall be final and binding upon all interested parties and distribution of Trust Funds in the manner herein provided shall relieve the Trustees of any further responsibility with respect to such property.

5.07. Notwithstanding any other provision contained herein, the Trustee may terminate any Trust created hereunder if, in the sole discretion of the Trustee, the assets are of such a small value that in the event of termination under the provisions of this paragraph and upon the date thereof, the entire Trust shall be distributed to those persons then entitled to the income from such Trust in the proportion that such income is distributable, or if the income is distributable among a class of beneficiaries in the discretion of the Trustee, then equally to the members of such class. Upon such distribution, the Trust shall terminate and the Trustee shall not be liable or responsible to any person or persons for such action, nor shall the Trustee be liable for refusing at any time to terminate a Trust pursuant to the provisions of this paragraph.

## ARTICLE 6

### MINORITY AND INCAPACITY OF BENEFICIARIES

6.01. <u>Minor Beneficiaries</u>. Notwithstanding any other provision herein to the contrary, upon termination of the Trust, in whole or in part, or as to any fund, or share thereof, the Trustee shall withhold delivery of each share payable to a person who has not attained twenty-one (21) years of age until such person shall have attained twenty-one (21) years of age, and until such date the Trustee shall apply to the use of any such person such sum or sums from the income and principal of the share to which such person is entitled as the Trustee may deem necessary or desirable for the health, maintenance, support and education of such person.

If such person shall die prior to attaining twenty-one (21) years of age, the entire balance of his share, including accumulated income, shall be distributed pursuant to Section 5.04.

Until such person attains twenty-one (21) years of age the Trustee may accumulate for the benefit of such person so much of said income as shall not be necessary, in the opinion of the Trustee, for the purposes hereinabove set forth in this Section, and the Trustee may, in the Trustee's sole discretion, add the same to the principal of the share from which derived.

All powers conferred upon the Trustee relating to the investment and management of the Trust Estate shall be applicable to property held hereunder for a person not yet twenty-one (21) years of age. Nothing contained in this Section shall be deemed to postpone the vesting in such person of any principal or income in accordance with the provisions of this instrument and any provision in this Section to the contrary notwithstanding, any fund or share of any fund held for the benefit of any such person shall be distributed to such person no later than twenty-one (21) years after the death of the last survivor of Grantor's lineal descendants living on the date this Trust becomes irrevocable.

10

TRUST 748

Furthermore, this Section is expressly inapplicable to distributions from the Trust Estate pursuant to the effective exercise of a power of appointment.

6.02. <u>Making Trust Distributions.</u> All distributions of income or principal from any Trust created hereunder, or share or portion thereof, to any beneficiary hereunder shall be made to such beneficiary; or any such payment, upon the request of such beneficiary given at any time, may be deposited in any bank to the credit of such beneficiary in any account carried solely in the name of such beneficiary; provided, however, that if any beneficiary hereunder shall be under legal disability by reason of minority or declaration or adjudication by a court of competent jurisdiction, or if in the Trustee's discretion, the Trustee shall determine that any beneficiary is incapacitated, physically or mentally, to such an extent as in the opinion of the Trustee shall make it impossible or impracticable for such beneficiary to give prompt and intelligent attention to business matters, the Trustee may make such distribution of income or principal, for the sole benefit of such beneficiary, in such of the following ways as the Trustee shall deem most desirable:

A.    To the duly qualified guardian or legal representative of such beneficiary;

B.    To one or more persons who are near relatives or friends of such beneficiary;

C.    By using such income or principal directly for the benefit of such beneficiary; or

D.    In the case of a person not yet twenty-one (21) years of age, either directly to such minor, perhaps by depositing such distribution in a savings account standing in the beneficiary's name alone which is maintained in a Federally insured bank, credit union, or savings and loan association, or to a custodianship established (either by the Trustee or by another person) for the benefit of the minor pursuant to the version of the Uniform Gifts to Minors Act which has been adopted by the particular State in which the custodianship has been established.

The Trustee shall be as fully discharged for any distribution so made as if it had actually been made to and receipted for by such beneficiary. The Trustee shall not be under any duty to see to the use or application of funds so distributed.

6.03. <u>Institutionalized Beneficiaries.</u> If at any time any beneficiary of a Trust created herein is (a) present in an institution maintained by the government; (b) receiving or eligible to receive any State, Federal or other governmental financial assistance; or (c) if any such assistance is available to an institution not maintained by the government because said beneficiary is present herein, then the Trustee shall make no payments to said governmentally or privately maintained institution nor to the State, Federal or other governmental agency providing such assistance, but shall merely (i) make supplementary payments to said governmentally or privately maintained

11

institution or (ii) supplement said institutional care or any government payments made to or for such beneficiary, if, in the sole discretion of the Trustee, additional funds are needed to be paid to or applied for the benefit of such beneficiary for such beneficiary's most comfortable health, maintenance, support and education, including travel.

## ARTICLE 7

## POWERS OF THE TRUSTEE

7.01.  In General.  In the administration of the Trust Estate, including each fund or share thereof and shares held for minors, and including the period after termination but before final distribution, the Trustee shall have the following powers in addition to powers otherwise conferred upon the Trustee by the Oklahoma Trust Act (60 O.S. 175.1 to 175.53) or by this instrument, such powers to be exercised from time to time in the Trustee's sole discretion and without order of court:

A.   Power of Sale.  To hold, sell, exchange, lease, make contracts for any term irrespective of the duration of the Trust and to convey or transfer the property comprising the Trust Estate upon such terms and conditions and in such manner as the Trustee shall determine;

B.   Investments.  To retain without liability for depreciation or loss any investments originally received and to invest and reinvest all or any part of any property comprising the Trust Estate in stocks (both preferred and common), bonds, notes and other obligations of corporations, shares in real estate trusts, mutual funds, common trust funds, including, without limitation, real estate, investments of a wasting nature, and investments which are viewed as likely to increase in value but which are currently not income producing, regardless of the proportion which any investment or any class or type of investment of similar character may bear to the entire amount of the Trust Estate, and without being limited to the classes of investments which a Trustee is authorized by law of any rule of court to make;

C.   Bankruptcy.  To participate in reorganizations, recapitalizations, consolidations, mergers, exchanges, liquidations and creditors' and bondholders' agreements;

D.   Nominee.  To register or hold share certificates, bonds or other property in the Trust Estate in bearer form or in the name of the Trustee's nominee, provided that the Trustee shall be responsible for the acts of such nominee;

12

TRUST 750

E.  <u>Loans</u>.  To make advances and to borrow money, including from itself in its corporate capacity, or if an individual is serving as Trustee, from such individual, upon such terms and conditions as the Trustee shall determine, to issue a promissory note or notes and to secure the payment thereof by mortgaging or pledging any part or all of the Trust Estate;

F.  <u>Voting Rights</u>.  To exercise voting rights and issue proxies, which may be discretionary and with power of substitution, in connection with any stock or other securities in the Trust Estate;

G.  <u>Pre-emptive Rights</u>.  To exercise rights to purchase shares of stock and to sell or redeem fractional shares of stock;

H.  <u>Compromise Claims</u>.  To compromise, compound, release, waive and discharge debts and claims of every kind, nature or description owing to or by the Trust Estate; to abandon any property considered by the Trustee to be worthless; and to pay taxes, expenses, costs and charges incurred or arising in connection with the administration and management of the Trust Estate;

I.  <u>Distribution in Kind</u>.  To make any division or distribution directed hereunder in cash or in kind, or partly in cash and partly in kind, but any property divided or distributed in kind shall be valued at its fair market value as of the date of division or distribution, without regard to the income tax basis of specific property allocated to any beneficiary (including any Trust), and, if the fair market value of any such property cannot be readily determined, a just and equitable value shall be assigned to such property by the Trustee; provided, further, that the Trustee is not limited to making prorata distributions of assets in kind, and is expressly authorized to make non-prorata distributions if the Trustee considers such to be in the best interests of the affected Trust beneficiaries;

J.  <u>Real Estate</u>.  To improve or develop real estate, to construct, alter or repair buildings or structures, to settle boundary lines, to grant easements and other rights, to partition, and to join with co-owners and others in dealing with real estate;

K.  <u>Professional Assistants</u>.  To employ investment counsel, agents, brokers, accountants, and attorneys and to pay them reasonable compensation for their services;

L.  <u>Additions</u>.  To receive additions to the Trust Estate and to hold and administer the same under the provisions hereof;

13

TRUST 751

M.   <u>Ministerial Powers</u>.  To execute deeds, transfers, leases, assignments and other instruments necessary to carry out the Trustee's powers hereunder;

N.   <u>Purchase from Estate</u>.  To use the income and principal of the Trust Estate after the death of each Grantor, if there be more than one, to acquire property owned by the general estate of each such Grantor;

0.   <u>Insurance</u>.  To insure any Trust assets, including those held in a safe deposit box;

P.   <u>Form Partnerships</u>.  To form a general or limited partnership or partnerships under any name or names of Trustee's selection for the purpose of taking and holding title to all or any of the assets comprising the estate or Trust property; said partnership or partnerships shall have the power to deposit, withdraw, insure, sell, loan, mortgage, lease, assign, convey, exchange, transfer or deal with said Trust property in all ways permitted to the Trustee and to take any such action over the signature of only one partner or of the partnership itself and any town clerk, title examiner, or insurer, any broker, bank, savings bank, savings and loan association and any corporation or its transfer agent or registrar may presume conclusively that said partnership or partnerships are the actual owners of the bank deposits, savings and loan shares and securities registered in their names and submitted for transfer or registration;

Q.   <u>Reserves</u>.  Out of rents, profits, or other income received, the Trustee may set up reserves for taxes, assessments, insurance premiums, repairs, improvements, depletion, depreciation, obsolescence and general maintenance of buildings or other property;

R.   <u>Oil and Gas Interests</u>.  To purchase or otherwise acquire oil and gas and other similar or dissimilar mineral interests, leases, royalties, overriding royalties, production payments, oil payments, gas payments, net profit overriding royalties, and net profit interests.  In connection with such investments, the Trustee shall have full power and authority to enter into development and drilling contracts and operating contracts and unitization agreements, and make agreements for present or future pooling of any interest in oil, gas or other mineral properties and for secondary recovery projects, and shall have with respect to any and all oil, gas and other mineral properties, whether similar or dissimilar, all of the rights and powers that a prudent owner of any such properties would have with respect to properties of like kind;

S.   <u>Form Corporations</u>.  To form a corporation or corporations or participate in the formation of a corporation or corporations and convey to it or them

14

TRUST  752

Trust property or any part hereof, and hold, subject to the provisions of the Trust, the considerations accruing therefrom, whether the same be in the form of bonds, debentures, shares of stock, certificates of interest, or any other thing of value;

T.    <u>Continue Business</u>.  To engage in any lawful business including the power to commence or continue at the risk of the Trust Estate the operation of any business which may become a part of the Trust Estate, and to sell, liquidate, or otherwise terminate any business interest including the fulfillment of any agreement for the disposition of any such business interest;

U.    <u>Reliance</u>.  To rely upon any notice, certificate, affidavit, letter, telegram, or other paper document, or evidence believed or deemed by the Trustees to be genuine or sufficient in making any payment or distribution;

V.    <u>Securities of Trustee</u>.  To retain any stock or other security received from any source and issued by any corporate Trustee in its individual capacity, by a bank holding company that owns stock of a Trustee bank, or by any related or affiliated corporation controlled by the bank holding company. This authority to retain includes stock dividends, securities issued in lieu thereof and securities issued as a result of any recapitalization, consolidation, or merger of a Trustee.  The Trustee shall have with respect to these stocks and securities the same powers that apply to other Trust property;

W.    <u>Common Fund</u>.  To allocate different kinds of disproportionate shares of property or undivided interests in property among the beneficiaries or Trusts, and to determine the value of any such property; the Trustee may make joint investments of funds in such Trusts, and may hold the several Trusts as a common fund, dividing the net income therefrom among the beneficiaries of the several Trusts proportionately.

7.02.    <u>Principal and Income</u>.  The Trustee shall allocate receipts, gains, losses and expenditures to income and principal in accordance with generally accepted principles of Trust accounting and applicable law governing the Trust Estate as the same may exist from time to time; but the Trustee is directed to allocate to principal all distributions representing capital gains and losses received from the sale of securities held by regulated investment companies, real estate investment Trusts, or mutual funds owned by the Trust as well as all other realized capital gains and losses, and to allocate to income all current expenses and amortize out of income premiums paid on bonds, debentures or other money obligations.

7.03.    <u>Trust Unfunded</u>.  Notwithstanding any other provision herein or rule of law to the contrary hereof so long as the Trust Estate consists only of cash in the amount of FIVE

15

HUNDRED DOLLARS ($500.00) or less, the Trustee shall have no investment or other duties hereunder except to hold safe the assets of the Trust Estate.

7.04. <u>Use of Agency Accounts</u>. In those instances where a noncorporate fiduciary is serving as Trustee, each such noncorporate fiduciary shall have the power to deposit all or any portion of the Trust Estate in a custody account or custody accounts with commercial banks having Trust powers or with Trust companies; to pay reasonable compensation for such custodial services. Whenever Trust property is placed in a custody account, the noncorporate fiduciary shall not take into account this property in computing such noncorporate fiduciary's fee as Trustee.

7.05. <u>Consolidation of Trust Shares</u>. The Trustee may, in the exercise of the Trustee's sole discretion, elect to hold two or more Trusts or other funds provided for herein in one or more consolidated funds, in which the separate Trusts or funds shall have undivided interests and be reflected as such on the Trustee's books of account.

7.06. <u>Provisions of Trust Control</u>. In addition to the powers conferred on the Trustee by this instrument or by law, the Trustee shall also enjoy the rights, powers and immunities granted to trustees under local law as the same may be amended, superseded or replaced from time to time, but to the extent the provisions of this instrument and local law are inconsistent, the provisions of this instrument shall control to the extent permitted by law.

7.07. <u>Tax Elections</u>. The Trustee may make such elections under the tax laws applicable to the estates of the Grantor and to the Trust Estate as the Trustee, in the Trustee's sole discretion, determines. No compensating adjustments between principal and income, nor with respect to any Trust or beneficiary, shall be made even though the elections may affect (beneficially or adversely) the interest of the beneficiaries. The decision of the Trustee shall be binding upon all persons interested herein.

7.08. <u>Division of Duties Between Co-Trustees</u>. While two or more Trustees are serving hereunder, the powers, duties, and authorities of the Trustees shall be exercised by them jointly. However, one or more of such Trustees may at any time by an instrument in writing delegate to the other Trustees all or less than all of the powers conferred upon that Trustee, either for a specified time or until the delegation is revoked by a similar instrument. Checks shall be drawn upon the Trust bank accounts in such manner as may be agreed upon by the Trustees from time to time as evidenced by the execution of the bank signature cards. Any person dealing in good faith with a Trustee may rely without inquiry upon the certificate of such Trustee with respect to any delegation.

7.09. <u>Ancillary Proceedings</u>. If at any time any Trust property is situated in a jurisdiction (within or outside the United States of America) in which a Trustee is unable or unwilling to act, the remaining Trustee or Trustees may act in such jurisdiction. If the Trustee then serving is unable or unwilling to act, the Trustee may appoint an Ancillary Trustee (herein so-called) in such jurisdiction and may confer upon the Ancillary Trustee such rights, powers, discretions, and

16

duties to act solely with respect to such assets as the Trustee deems necessary or expedient. The Ancillary Trustee shall be answerable to the Trustee for all assets which may be received by the Ancillary Trustee in connection with the administration of such property. The Trustee may pay to the Ancillary Trustee reasonable compensation for its services and may absolve it from any requirement that it furnish bond or other security.

7.10. <u>Fiduciary Capacity</u>. No powers enumerated herein or accorded to Trustees generally by law shall be exercisable by the Trustee in any capacity other than as a fiduciary.

7.11. <u>Liability of Trustee</u>. No Trustee shall be liable for any mistake or error in judgment. A noncorporate Trustee shall be liable only for willful misconduct or gross negligence.

## ARTICLE 8

## COMPENSATION OF THE TRUSTEE

8.01. <u>Reasonable Fees</u>. At any time during the continuation of the Trust, whether before or after the death of Grantor, the Trustee shall be entitled to receive reasonable fees for ordinary services hereunder, but such fees shall be reasonably related to those fees being charged, from time to time, in the county in which the Trustee maintains its principal office, by other corporate or individual trustees for the performance of like or comparable services under <u>inter vivos</u> Trust Agreements. The Trustee's fees under this Section shall be charged to and deducted from income and/or principal as the Trustee may deem appropriate and shall be payable at such times as the Trustee may determine.

8.02. <u>Expense Reimbursement</u>. The Trustee shall be entitled to reimbursement for the necessary expenses which are paid for and on behalf of the Trust.

## ARTICLE 9

## SUCCESSOR TRUSTEES

9.01. <u>Default of Prior Trustee</u>. No Trustee hereunder, whether original or successor, shall be liable for the default of any existing or prior Trustee, Co-Trustee or legal representative thereof, or any Executor or Administrator from whom distributions may be received (any of such fiduciaries being hereinafter referred to as a "Prior Fiduciary") or for failure to contest the accounting rendered by such Prior Fiduciary, unless during the Grantor's lifetime, the Grantor, or after the Grantor's death, a majority of the adult Trust beneficiaries, or if there be none, the legal or natural guardians of a majority of the minor Trust beneficiaries, shall have, in writing, requested the Trustee to contest such accounting or rectify such default prior to acceptance.

17

Similarly, any Trustee hereunder, whether original or successor, may accept the Trust assets as delivered to such Trustee by such Prior Fiduciary and shall be responsible only for such assets.

However, nothing in this Section shall limit the power of any Trustee hereunder to condition acceptance of the Trust or any assets upon a proper accounting or from requiring such an accounting or a rectifying of a prior default from a Prior Fiduciary.

9.02. <u>Merger</u>. If any corporate Trustee serving hereunder shall be a party to a merger or consolidation or shall transfer all or substantially all of its Trust business, the corporation continuing after such merger, resulting from such consolidation or receiving all or substantially all of the Trust business of the Trustee upon such transfer, shall qualify as Successor Trustee hereunder without the execution or filing of any instrument or the performance of any further acts.

9.03. <u>Trustee's Account Upon Removal</u>. Upon the removal of the Trustee and appointment of a Successor Trustee, or upon the resignation of the Trustee, after the Trustee shall have been paid any sum or sums due or to become due the Trustee by reason of advances or loans made by the Trustee to the beneficiaries hereunder, or to the Trust Estate, or on account of any indebtedness of the Trustee for which the assets of the Trust Estate are liable, or on account of any compensation payable to the Trustee, and for all costs, expenses and taxes arising from the transfer of the assets of the Trust Estate, the Trustee shall assign, transfer, convey and deliver to the Successor Trustee, as the case may be, all of the property comprising the account.

Such account shall be provided to all of the persons described elsewhere in this instrument who are to receive the Trustee's annual account. The written approval of such account by all of such persons shall be binding upon all other persons who are eligible beneficiaries.

In addition, the Trustee shall furnish and deliver to the Successor Trustee such books of account, receipts, and other documents or papers having to do with the administration of the Trust, or true copies of transcripts thereof, as may be requested by the Successor Trustee. Furthermore, the Successor Trustee may accept without audit the accounting of the preceding Trustee without liability.

9.04. <u>Continuity</u>. Every Successor Trustee shall have all of the rights, powers, discretions, privileges and immunities of the original Trustee.

9.05. <u>Resignation</u>. The Trustee may resign at any time on sixty (60) days written notice delivered to the Grantor, if living, or, if the Grantor is deceased, to the then income beneficiaries. In the event of the death, resignation or incapacity of the Trustee, a Successor Trustee shall be appointed in the manner specified in this instrument for the appointment of a Successor Trustee when the incumbent Trustee is removed.

TRUST 756

9.06.  Ineligibility to Serve as Trustee.  No one shall be appointed a Trustee hereunder or continue to serve as a Trustee hereunder if such person's presence in the office of the Trustee causes the income of this Trust to be taxed to the Grantor under the Federal Internal Revenue Code and if the presence of someone else in the office of the Trustee would avoid such result.

Furthermore, after this instrument becomes irrevocable, no one shall be appointed as Trustee nor continue to serve hereunder at any time when the Trust Estate includes policies of insurance on the life of such person if such person's presence in the office of the Trustee causes the proceeds of that insurance to be included in the gross estate of such person for Federal estate tax purposes and if the presence of someone else in the office of Trustee would avoid that result.

9.07  Incapacity of Individual Trustee.  If any individual Trustee becomes unable to discharge the duties of Trustee hereunder by reason of accident, physical or mental illness, progressive or intermittent physical or mental deterioration, or other similar cause, and does not resign, then upon certification by two (2) doctors licensed to practice medicine within the State of Oklahoma affirming that each has examined the Trustee and that each has concluded based on such examination, that the Trustee is unable to discharge the duties of Trustee, such Trustee shall thereupon cease to be Trustee in the same manner as if such Trustee had resigned on the date of the certification.

9.08.  Co-Trustee Ceases to Serve.  If at any time more than one Trustee is serving hereunder and one of them ceases to serve for any reason, the remaining Trustee or Trustees, if any, shall continue to serve as Trustee or Trustees and enjoy all of the powers, duties, discretions and immunities conferred upon the original Trustees.

## ARTICLE 10

## ACCOUNTS AND STATEMENTS

10.01.  Regular Reports to Beneficiaries.  The Trustee shall keep accurate records with respect to each separate Trust, fund, or share created hereunder and at least once each year shall make a report in writing:

A.    To each living person who has during such year received a distribution of either income or principal from one or more of the separate Trusts, funds, or shares created hereunder;

B.    To each living person over the age of eighteen (18) years who is eligible to receive a distribution of income or principal from one or more of the separate Trusts, funds, or shares created hereunder whether or not such person, in fact, received such distribution; and

19

TRUST  757

C.    To each member of the Trust Committee, if a Trust Committee is provided for in this instrument.

Such report shall be for the calendar or fiscal year beginning each year on the date selected by the Trustee as appropriate for this purpose and shall be submitted to each such person (and to the guardian, conservator, committee, or other like official of any such person who is under a legal disability) with reasonable promptness after the end of such period.

Each report shall include a statement of all receipts and disbursements during such year, and of such other acts of the Trustee as may be necessary to furnish each beneficiary with adequate information as to the condition of the Trust Estate.  In addition, such statements of account shall include all information necessary to enable each such person to prepare his or her Federal and State tax returns.

10.02.  _Inspection_.  The records of the Trustee with respect to this Trust shall be open at all reasonable times to the inspection of the Grantor and the beneficiaries.

10.03.  _Final Account_.  The Trustee shall provide a final accounting in connection with the final distribution of this Trust.

### ARTICLE 11

### DEFINITIONS AND MISCELLANEOUS PROVISIONS

11.01.  _Definitions_.  As used in this Agreement:

A.    The word "Trustee" shall be taken to refer to the fiduciary then in office regardless of the number or whether individual or corporate, and shall include a Successor Trustee or Trustees, whether so expressed or not.

B.    The word "Will" and the term "Last Will and Testament" shall include not only the Last Will and Testament of the person referred to, but also any Codicils thereto.

C.    The word "Executor" shall include Executrix, Administrator, and Administratrix.

D.    The words "Trust Estate" shall mean the funds and property subject hereto during the Grantor's lifetime and at the Grantor's death together with any funds and property receivable: (1) under the provisions of the Grantor's Last Will and Testament, or otherwise; or (2) from any other source at any time.  The words "Trust Estate" shall also include any separate funds or

20

TRUST 758

shares into which the funds and property subject hereto may be divided pursuant to the terms of this instrument as originally executed or as subsequently amended.

E.    The phrase "per stirpes" as used herein shall be construed to mean that the gift referred to is to be divided so that there is: (1) one share for each of the then living lineal descendants of the person referred to in the gift who are in the nearest degree of kinship to that person; and (2) one share for each deceased lineal descendant in the same degree who left lineal descendants surviving the person referred to in the gift. Each surviving lineal descendant in the nearest degree is to receive one share and the share of each deceased lineal descendant in the same degree shall be divided pursuant to the terms of this instrument as originally executed or as subsequently amended.

11.02.  Pronouns.  Any personal pronoun wherever used herein shall be deemed to include the masculine, feminine and neuter genders as the context may require and the singular shall include the plural and vice versa.

11.03.  Applicable Law.  The Trust created hereby and each fund or share thereof is governed, construed and administered according to the laws of the State of Oklahoma, and shall continue to be so governed, construed and administered, even though the situs of the Trust is elsewhere.

11.04.  Captions.  All titles, headings, and captions used herein have been included for convenience of reference only and shall not be deemed to define or limit the provision hereof or to affect in any way the construction or application of those provisions.

11.05.  Invalid Provisions.  If any part of this writing or the Trusts created hereby shall be invalid, illegal, or inoperative for any reason, it is Grantor's intention that the remaining parts, so far as possible and reasonable, shall be effective and fully operative. Any fiduciary serving hereunder may seek and obtain court instructions for the purpose of carrying out as nearly as possible the intention of this instrument as shown by the terms hereof, including the term held invalid, illegal, or inoperative.

11.06.  Agreement Binding on Estates and Successors.  This Agreement shall extend to and be binding upon the estate, executors, administrators, and assigns of the Grantor and Trustee.

11.07.  Death of a Beneficiary.  The death of a beneficiary shall be evidenced by presentation of a certified copy of such person's death certificate.

11.08.  Trustee to Serve Without Bond or Court Supervision.  Neither the Trustee nor any Successor Trustee shall be required to give or file any bond or any other security for the faithful performance of the duties of said office and should a bond be required by law, no surety on such

21

TRUST 759

bond shall be required. Grantor directs that, to the full extent permitted by law, the Trust shall be administered free from the supervision and jurisdiction of any court, but the Trustee or any beneficiary hereunder may request court instructions or submit a dispute to the appropriate court at any time.

11.09. <u>Certified Copies</u>. To the same effect as if it were one of the executed copies of this instrument, anyone may rely on a copy certified by the Trustee (in an Affidavit given for this purpose before a Notary Public) to be a counterpart of this instrument (and of the amendments or other writings, if any, endorsed on or attached thereto) kept at the office of the Trustee. Anyone may rely upon any statement of fact certified by anyone who appears from the original document or a certified copy thereof to be a Trustee hereunder.

11.10. <u>Transactions With Trustee</u>. No person, firm or corporation dealing with the Trustee shall be obligated to inquire into the Trustee's power of authority or into the validity of any act of the Trustee or be liable for the application of any money or other property paid or loaned to the Trustee in the management of the Trust Estate.

11.11. <u>Education</u>. The term "education" shall mean education, training or institutional care at any private school, night school, public school, preparatory school, military academy, junior college, college, university, graduate and professional school, trade school, school for retarded, blind or handicapped (whether physically, perceptually, emotionally or mentally) children or adults or school for children or adults subject to learning disabilities or hostels, half-way houses, sheltered workshops associated with private living arrangements and the like, whether connected with a private institution or not, as well as any other similar institutions not mentioned herein, either in the United States or abroad.

Expenses incurred for education shall be deemed to include tuition, board, lodging, school uniforms, any special clothing needed for school, books, supplies, tools, instruments, laboratory, health, gymnasium and other fees and incidental expenses, medical and psychiatric care, as well as transportation expenses for trips between home and said institution, and all other services and things (including vocational apprenticeships, internships and residences) connected with any course of study, provided that in each such case, the course of study is approved by the Trustee.

In addition, the term "education" shall include expenses incurred for travel which the Trustee believes will contribute to the educational experience of the person undertaking the travel. However, the term "education" does not include any and all travel and the Trustee shall be judicious in approving or reimbursing expenses for educational travel.

11.12. <u>Perpetuities Provision</u>. Notwithstanding any provisions of this Trust Agreement to the contrary, any Trusts created hereunder shall terminate no later than twenty-one (21) years from and after the death of Grantor and those lineal descendants of Grantor's living on the date this instrument becomes irrevocable.

22

Upon such termination, subject to the retention provisions of this instrument for persons not yet twenty-one (21) years of age, the assets and property of each Trust shall be delivered and distributed, outright and free of Trust, to the person or persons to whom the income of the particular Trust may be distributed at that time. In case the income of a particular Trust may be distributed to more than one person at that time, the Trustee shall divide the assets and properties between such persons in such proportions between them as the Trustee shall determine in the Trustee's sole discretion, to best carry out the Grantor's intentions as expressed in this instrument.

Notwithstanding the foregoing, in the event this Trust is merged with a Trust having a shorter perpetuities period, the shorter perpetuities period will apply.

## ARTICLE 12

## SPENDTHRIFT AND SEPARATE PROPERTY PROVISIONS

12.01.  Separate Property.  Grantor intends to make a gift to the respective beneficiaries of only that portion of the income and principal of the Trust which is in fact distributed to them. Inasmuch as the amounts actually distributed to the respective beneficiaries constitute the gift the Grantor contemplated making, such distributions, whether they be income or principal, shall constitute the separate property of each such distributee and not the community property of such distributees. Furthermore, it is the Grantor's intention that no beneficiary shall have any interest in any undistributed income and principal until the time for such distribution occurs and, accordingly, such undistributed income and principal shall not be deemed the community property of any such beneficiary.

12.02.  Spendthrift.  No beneficiary of this Trust shall have the right or power to anticipate, by assignment or otherwise, any income or principal given to such beneficiary by this Trust, nor in advance of actually receiving the same have the right or power to sell, transfer, encumber or in anywise charge same; nor shall such income or principal, or any portion of the same, be subject to any execution, garnishment, attachment, insolvency, bankruptcy, or legal proceeding of any character, or legal sequestration, levy or sale, or in any event or manner be applicable or subject, voluntarily or involuntarily, to the payment of such beneficiary's debts.

23

TRUST 761

## ARTICLE 13

### EXECUTION

IN WITNESS WHEREOF, the parties have hereto set their hands to duplicates hereof on this 5th day of October, 1993.

_____
LORICE T. WALLACE, Grantor

Witnesses as to Grantor:

1. _____
2. _____


_____
LORICE T. WALLACE, Trustee

Witnesses as to Trustee:

1. _____
2. _____

24

TRUST 762

State of Oklahoma    )
                     ) ss.:
County of Tulsa     )

     I, the undersigned Notary Public in and for the County and State aforesaid do hereby certify that LORICE T. WALLACE, personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that she signed, sealed and delivered the said instrument as her free and voluntary act for the uses and purposes therein set forth.

     GIVEN under my hand and official seal this 5th day of October, 1993.

_____
Notary Public

My Commission expires:

3/21/97

[Notarial Seal]

RJS:AJB\WA3994-13.FTR

25

TRUST 763