# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: the Lorice T. Wallace Revocable Trust | ) | |
| dated December 26, 1974, as restated | ) | |
| effective October 5, 1993 and as amended on | ) | |
| February 12, 1998, the Lorice T. Wallace | ) | D.C. Case No. 1:06CV01817 |
| Irrevocable Trust dated February 8, 1996, and | ) | Judge Reggie B. Walton |
| the Lorice T. Wallace Irrevocable Trust dated | ) | |
| September 11, 1992, also known as the Lorice | ) | Removed from: |
| T. Wallace Life Insurance Trust, and the Lisa | ) | District Court of Tulsa County, |
| Frances Wallace Discretionary Spendthrift | ) | State of Oklahoma, |
| Trust. | ) | Case No. PT-2002-56 |

## COMBINED MOTION TO DISMISS AND BRIEF IN SUPPORT

This Motion to Dismiss is filed on behalf of nominal Defendants The Trust Company of Oklahoma ("Trust Company"), Ronald J. Saffa, James E. Poe, James C. Milton, Reece Morrel, Adam Adwon, G. Reuben Davis, William Grimm, Kenneth Crump, John Woolman, "the Paul Mindeman Estate," Edward Kallay, The Kallay Group, LLC, and CDSG 1, LLC incorrectly identified by Mr. Wallace as CDSGA, LLC (the "Moving Defendants").

This action is purportedly a removal of a Tulsa, Oklahoma state-court trust administration action that is in the nature of an *in rem* proceeding. As successor co-trustees of the Lorice T. Wallace Revocable Trust and the Lorice T. Wallace Irrevocable Trust, Trust Company and Mr. Saffa are the Petitioners in the purportedly removed state-court action. On November 9, 2006, Trust Company and Mr. Saffa filed a Motion to Remand (Doc. No. 4). The Motion to Remand remains at issue before the Court.

Subsequently, Respondent Stephen Paul Wallace attempted service of summonses. These summonses have been accompanied, in some instances, by the October 23, 2006 Notice of Removal (Doc. No. 1), which also purports to be a "complaint." In other instances, these summonses have been accompanied by an Amended Complaint (Doc. No. 31), filed on January

8, 2007. With these documents, Mr. Wallace has attempted to assert federal-court claims, in this removed *in rem* action, against (1) state-court Petitioners Trust Company and Mr. Saffa, (2) James C. Milton and James E. Poe, who are the Tulsa, Oklahoma attorneys for Trust Company and Mr. Saffa, (3) Hon. Gregory K. Frizzell, who until recently was the Tulsa, Oklahoma state-court trial-court judge assigned to the purportedly-removed trust administration action, (4) Hon. James M. Inhofe, who is the senior United States Senator from Oklahoma, (5) Guaranty Abstract Company (a Tulsa, Oklahoma real-estate service company) and its principal Jack Kirkpatrick, (6) Hon. Brad Henry, the Governor of Oklahoma, (7) Hon. W.A. Drew Edmondson, the Oklahoma Attorney General, (8) Hon. Kenneth L. Buettner, a judge of the Oklahoma Court of Civil Appeals who signed decisions in several recent appeals initiated by Mr. Wallace, (9) Hon. David Peterson and Hon. Ronald Shaffer, both of whom recently retired as state-court trial judges in Tulsa, Oklahoma and from time to time were assigned to proceedings in which Mr. Wallace was a party, (10) Reece Morrel, a Tulsa, Oklahoma attorney who is Mr. Saffa's law partner, (11) Edward Kallay, the Kallay Group, and C.D.S.G.I., L.L.C., who are real-estate investors who have entered into court-approved real-estate contracts with certain of the trusts that are before the state court in the purportedly-removed *in rem* action, (12) Adam Adwon, a real-estate appraiser in Tulsa, Oklahoma, who has performed appraisal work for the trusts and who has testified in hearings regarding the court-approved real-estate contracts, (13) G. Reuben Davis, a Tulsa, Oklahoma attorney who has represented Tulsa County Sheriff Stanley Glanz in proceedings involving Mr. Wallace, (14) William Grimm, a Tulsa, Oklahoma attorney who has represented various parties in litigation stemming from Mr. Wallace's conduct, (15) Kenneth Crump, a Tulsa, Oklahoma attorney who has represented various parties in litigation stemming from Mr. Wallace's conduct, (16) John Woolman, a Tulsa, Oklahoma real-estate investor who is a frequent

litigation target of Mr. Wallace, (17) "the Paul Mindeman Estate," a non-entity that appears to represent an effort by Mr. Wallace to sue the family of the late Paul Mindeman, former chairman of Trust Company, (18) Patrick J. Malloy III, a Tulsa, Oklahoma attorney who is trustee of Mr. Wallace's bankruptcy estate, and (19) David Fist, a Tulsa, Oklahoma attorney who is a frequent litigation target of Mr. Wallace.  Other than perhaps Senator Inhofe, none of these twenty-four defendants would be amenable to suit in Washington, D.C.

The moving Defendants request dismissal of the "Notice of Removal and Complaint" and "Amended Complaint" on the basis of (1) lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), (2) lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), (3) failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), and (4) improper venue pursuant to Fed. R. Civ. P. 12(b)(3).

In support of this motion, the moving Defendants state as follows:

## STATEMENT OF FACTS

**A.     Administration of the trusts.**

1.     Trust Company and Mr. Saffa are successor co-trustees of the LTW Revocable Trust[1] and the LTW Irrevocable Trust.[2]  [Milton Declaration, ¶ 36; *id.* at Ex. "1", at pp. 1-2, ¶¶ 1, 2.]  Trust Company is trustee of the LTW Life Insurance Trust.[3]  [Milton Declaration, ¶ 36; *id.* at Ex. "1", at p. 2, ¶ 3; *id.* at Ex. "2", at p. 1, ¶ 3(a); *id.* at Ex. "2", at p. 2, ¶ 4(a); *id.* at Ex. "3".] Administration of these trusts occurs in Tulsa County, State of Oklahoma.  [Milton Declaration, ¶ 36.]

---

[1]     As used in this document, the term "LTW Revocable Trust" will refer to the Lorice T. Wallace Revocable Trust dated December 26, 1974, as restated and amended.

[2]     The term "LTW Irrevocable Trust" will refer to the Lorice T. Wallace Irrevocable Trust dated February 8, 1996.

[3]     The term "LTW Life Insurance Trust" will refer to the Lorice T. Wallace Irrevocable Trust dated September 11, 1992.

2.      Stephen P. Wallace is a beneficiary of the LTW Life Insurance Trust.  [Milton Declaration, ¶ 37; *id.* at Ex. "2", at p. 2, ¶ 4(b); *id.* at Ex. "3".]  Mr. Wallace is also named as a beneficiary of the LTW Revocable Trust and the LTW Irrevocable Trust.  However, the District Court of Tulsa County recently ordered that Mr. Wallace has forfeited his beneficial interest in the LTW Revocable Trust and the LTW Irrevocable Trust as a result of his violations of the no-contest provisions of the controlling instruments of the trusts.[4]  [Milton Declaration, ¶ 37; *id.* at Ex. "4", at p. 4.]

3.      Trust Company, Mr. Saffa, Mr. Poe, Mr. Milton, Mr. Morrel, Mr. Adwon, Mr. Davis, Mr. Grimm, Mr. Crump, Mr. Woolman, and "the Paul Mindeman Estate" are citizens of Oklahoma, as is Mr. Wallace.  [Milton Declaration, ¶ 38; Notice of Removal and Complaint (Doc. No. 1), p. 1, ¶ 1, 4, 5, Amended Complaint (Doc. No. 31) at p. 1].  The Moving Defendants have no connection to the District of Columbia other than being sued there by Mr. Wallace.  [Milton Declaration, ¶ 42.]

4.      The administration of the LTW Revocable Trust, the LTW Irrevocable Trust, and the LTW Life Insurance Trust takes place in Tulsa, Oklahoma.  [Milton Declaration, ¶ 39.]  None of the trust assets are located in District of Columbia.  [Milton Declaration, ¶ 39.]  Other than dealing with litigation initiated by Mr. Wallace, the trustees have no contact with the District of Columbia.  [Milton Declaration, ¶ 39.]

---

[4]      Mr. Wallace filed a facially-invalid notice of removal on the day before the forfeiture hearing, [Milton Declaration, ¶ 35 n.4; *id.* at Ex. "5"], and has recently requested that the U.S. District Court for the District of Columbia hold Tulsa County District Judge Gregory K. Frizzell in contempt of court for proceeding with the state-court hearing despite the facially-invalid notice of removal, [Milton Declaration, ¶ 35 n.4; *id.* at Ex. "6"].  Trust Company has filed a response showing that the state court acted properly in moving forward with the hearing despite the facially invalid notice of removal.  [Milton Declaration, ¶ 35 n.4; *id.* at Ex. "7".]

5.    Litigation of this matter in the District of Columbia will cause a great inconvenience to the Defendants.  [Milton Declaration, ¶ 40.]  As residents and citizens of Oklahoma, it would be a great burden on all Defendants to litigate this matter in the U.S. District Court for the District of Columbia.  [Milton Declaration, ¶ 40.]

6.    The moving Defendants would have no reason to expect that they would or could be named as defendants in a lawsuit filed in the District of Columbia.  [Milton Declaration, ¶ 41.]

7.    The District of Columbia has no interest in this matter.  [Milton Declaration, ¶ 42.]  Nearly every party to the litigation is a resident and citizen of Oklahoma.  [Milton Declaration, ¶ 42.]  The trust-administration activities giving rise to the litigation occurred in Oklahoma.  [Milton Declaration, ¶ 42.]

**B.    Tulsa County Case No. PT-2000-21.**

8.    On March 24, 2000, Trust Company and Mr. Saffa filed a Petition for Instructions with the District Court of Tulsa County, initiating Tulsa County Case No. PT-2000-21.  [Milton Declaration, ¶ 43; *id.* at Ex. "8".]  Trust Company and Mr. Saffa filed the Petition as successor co-trustees of the LTW Revocable Trust.  [Milton Declaration, ¶ 43; *id.* at Ex. "8", at p. 1 (introductory paragraph).]  The Petition was signed by attorney James E. Poe, who at the time represented both Trust Company and Mr. Saffa.  [Milton Declaration, ¶ 43; *id.* at Ex. "8", at p. 2; *id.* at Ex. "9", at p. 19, l. 25 through p. 20, l. 8; *id.* Ex. "9", at p. 67, ll. 8-16.]

9.    Trust Company and Mr. Saffa filed a First Amended Petition on May 10, 2000, adding the LTW Irrevocable Trust and the LTW Life Insurance Trust as additional trusts before the District Court of Tulsa County in Case No. PT-2000-21.  [Milton Declaration, ¶ 44; *id.* at Ex. "10".]  A Second Amended Petition was filed on November 13, 2000, bringing further issues before the District Court of Tulsa County in Case No. PT-2000-21.  [Milton Declaration, ¶ 44; *id.* at Ex. "11".]

5

10.    Trial was held in Tulsa County Case No. PT-2000-21 on February 28, 2002. Based on the trial's outcome, the District Court of Tulsa County entered a Journal Entry of Final Judgment dated March 25, 2002, resolving many of the issues related to the formation and administration of the LTW Revocable Trust, the LTW Irrevocable Trust, and the LTW Life Insurance Trust. [Milton Declaration, ¶ 45; *id.* at Ex. "1".] The March 25, 2002 Journal Entry shows that Mr. Wallace appeared at trial, through counsel, as a Respondent in Case No. PT-2000-21. [Milton Declaration, ¶ 45; *id.* at Ex. "1", at p. 1.]

11.    The March 25, 2002 Journal Entry of Final Judgment determined that Trust Company and Mr. Saffa are the successor co-trustees of the LTW Irrevocable Trust, and identified the trust's controlling instrument. [Milton Declaration, ¶ 46; *id.* at Ex. "1", at pp. 1, 3, ¶ 1, 10.]

12.    The March 25, 2002 Journal Entry of Final Judgment determined that Trust Company and Mr. Saffa are the successor co-trustees of the LTW Revocable Trust, and identified the trust's controlling instruments. [Milton Declaration, ¶ 47; *id.* at Ex. "1", at p. 2, ¶¶ 2, 9.]

13.    The March 25, 2002 Journal Entry of Final Judgment determined that Trust Company is the trustee of the LTW Life Insurance Trust, and identified the trust's controlling instrument. [Milton Declaration, ¶ 48; *id.* at Ex. "1", at p. 2, ¶¶ 3, 8; *id.* at Ex. "2", at p. 1, ¶ 3(a); *id.* at Ex. "2", at p. 2, ¶ 4(a).]

14.    The March 25, 2002 Journal Entry of Final Judgment determined that "[t]he documents and letters attached to the Original Petition as Exhibits 'B' through 'F' (identified at trial as Petitioners' Joint Exhibits 98, 100, 101, 102, and 103) fall within the language of paragraph 8 of the order entered on May 9, 2000, in *In re Lorice T. Wallace*, Case No. PG-99-

6

556, in the District Court of Tulsa County, State of Oklahoma, and are therefore null, void, and of no force or effect."  [Milton Declaration, ¶ 49; *id.* at Ex. "1", at p. 2, ¶ 7.]

15.     The documents identified – and declared void – by the March 25, 2002 Journal Entry of Final Judgment include:

(a)     A series of letters dated March 22 and 23, 2000, referenced indirectly by Mr. Wallace in paragraph 31 of his Complaint (Doc. No. 1).  [Milton Declaration, ¶ 48; *id.* at Ex. "8", Ex. "B", "C", "D", "E"; Complaint (Doc. No. 1), at p. 5, ¶ 31.]

(b)     The March 13, 2000 "Instrument Altering Trust," referenced by Mr. Wallace by date in paragraph 31 of his Complaint (Doc. No. 1).  [Milton Declaration, ¶ 48; *id.* at Ex. "8", Ex. "F"; Complaint (Doc. No. 1), at p. 5, ¶ 31.]

16.     The March 25, 2002 Journal Entry is a final order and was not appealed.  [Milton Declaration, ¶ 51; *id.* at Ex. "2", at p. 1, ¶ 3.]

## C.     Tulsa County Case No. PT-2002-56.

17.     On September 11, 2002, Trust Company and Mr. Saffa filed a Petition for Instructions, initiating Tulsa County Case No. PT-2002-56.  [Milton Declaration, ¶ 54; *id.* at Ex. "12".]  Among other things, the September 11, 2002 Petition requested that the District Court of Tulsa County accept continuing jurisdiction and supervision of the LTW Revocable Trust, the LTW Irrevocable Trust, and the LTW Life Insurance Trust.  [Milton Declaration, ¶ 52; *id.* at Ex. "12", at p. 13.]  During the succeeding months and years, the District Court of Tulsa County has proceeded to provide instructions to both the trustees and the beneficiaries on various issues.  [Milton Declaration, ¶ 52.]

18.     On March 10, 2006, the District Court of Tulsa County entered a Final Order regarding the LTW Life Insurance Trust.  [Milton Declaration, ¶ 53; *id.* at Ex. "3".]  The March 10, 2006 Final Order was designed to resolve all issues regarding the administration of the LTW Life Insurance Trust, so that administration of that trust could come to an end.  [Milton Declaration, ¶ 53; *id.* at Ex. "3", at p. 3, ¶ 7.]

19.    During proceedings leading up to the entry of the March 10, 2006 Final Order, Stephen P. Wallace attempted a collateral attack against the March 25, 2002 Journal Entry of Final Judgment entered in Tulsa County Case No. PT-2000-21. [Milton Declaration, ¶ 54; *id.* at Ex. "2", at p. 8, ¶¶ 21, 22; *id.* at Ex. "3".]  The District Court of Tulsa County rejected the collateral attack and directed that the Respondents "should be enjoined, in the same manner as would be entered in an interpleader action, from instituting any further action related to the LTW Life Insurance Trust against the trustee, its officers, directors, agents, employees and attorneys, except insofar as such action occurs properly within the confines of this proceeding or is a direct appeal taken from this proceeding." [Milton Declaration, ¶ 54; *id.* at Ex. "2", at p. 8, ¶ 22.]  The March 10, 2006 Final Order contained the ordered injunction. [Milton Declaration, ¶ 52; *id.* at Ex. "3", at p. 4, ¶ 9.]  Mr. Wallace never appealed the March 10, 2006 Final Order. [Milton Declaration, ¶ 54.]

20.    Even though Mr. Wallace's collateral attack against the March 25, 2002 Journal Entry of Final Judgment was conclusively resolved in the March 10, 2006 Final Order, Mr. Wallace has continued to file litigation against the trustees in the District Court of Tulsa County, the U.S. District Court for the District of Columbia, and the U.S. District Court for the District of Nebraska. [Milton Declaration, ¶ 55.]  Mr. Wallace's sister Mary Roma Wallace Jage has filed similar litigation against the trustees in the U.S. District Court for the Northern District of Oklahoma and the U.S. District Court for the Northern District of Illinois. [Milton Declaration, ¶ 55.]

**D.    N.D. Okla. Case No. 2002-CV-148.**

21.    As demonstrated above, the claims asserted in this action have been resolved already, many times.  In 2002, Mr. Wallace and his friend Ms. Jackson initiated an action in the U.S. District Court for the Northern District of Oklahoma, asserting the same claims against the

trustees as are asserted in the Complaint filed in this action. [Milton Declaration, ¶ 56; *id.* at Ex. "13"; *id.* at Ex. "14".]

22.    In the 2002 action, the Plaintiffs alleged RICO violations for the conduct by officers of Trust Company in their official capacity in administering the Frank A. Wallace and Lorice T. Wallace trusts. [Milton Declaration, ¶ 57; *id.* at Ex. "14", at pp. 15-16 (unnumbered paragraphs).] The Second Amended Complaint also asserted claims of conspiracy, embezzlement, and fraud by the trustees in administering the various Wallace family trusts. [Milton Declaration, ¶ 57; *id.* at Ex. "14", at pp. 15-16 (unnumbered paragraphs).]

23.    In N.D. Okla. Case No. 2002-CV-148, the Plaintiffs named Trust Company's President and CEO, Thomas W. Wilkins, as a Defendant. [Milton Declaration, ¶ 58; *id.* at Ex. "14", at p. 1 (caption).] The Plaintiffs also named Trust Company's Chairman, Paul H. Mindeman, as a Defendant. [Milton Declaration, ¶ 56; *id.* at Ex. "14", at p. 1 (caption).] Mr. Wilkins and Mr. Mindeman filed a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). [Milton Declaration, ¶ 58; *id.* at Ex. "15".] On May 28, 2002, the Rule 12(b)(6) motion was granted. [*Id.*]

24.    On May 30, 2002, the U.S. District Court for the Northern District of Oklahoma entered an Order dismissing the Plaintiffs' RICO claim for failure to comply with the Court's order requiring the Plaintiffs to file a RICO case statement. [Milton Declaration, ¶ 59; *id.* at Ex. "16".]

25.    In N.D. Okla. Case No. 2002-CV-148, the Plaintiffs named Ronald J. Saffa as a Defendant. [Milton Declaration, ¶ 58; *id.* at Ex. "14", at p. 1 (caption).] Mr. Saffa filed a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ.

P. 12(b)(6).  [Milton Declaration, ¶ 60; *id.* at Ex. "17".]  On July 8, 2002, the Rule 12(b)(6) motion was granted.  [*Id.*]

26.    Trust Company was dismissed from N.D. Okla. Case No. 2002-CV-148 on the basis that the Plaintiffs had failed to respond to an order to show cause directing the Plaintiffs to show why the action should not be dismissed for failure to serve pursuant to Fed. R. Civ. P. 4(m).  [Milton Declaration, ¶ 61; *id.* at Ex. "18".]

**E.    Du Page County, Illinois Case No. 2003CH001896.**

27.    On December 30, 2003, Mr. Wallace filed a Complaint in Du Page County, Illinois state court, asserting claims against Mr. Saffa, among others.  [Milton Declaration, ¶ 62; *id.* at Ex. "19".]

28.    On May 25, 2004, the Du Page County, Illinois state court entered an order dismissing the action with prejudice.  [Milton Declaration, ¶ 63; *id.* at Ex. "20".]

**F.    U.S. District Court for the District of Nebraska Case No.  4:06 CV 3214**

29.    On September 12, 2006 Mr. Wallace filed Complaint in the Federal District Court for the District of Nebraska alleging various RICO violations and fraud in the administration of the Wallace Family Trusts. [Milton Declaration, ¶ 64, at Ex. "32"] The District Court for the District of Nebraska dismissed all claims for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). [Milton Declaration, ¶ 65, at Ex. "35".]

**G.    Litigation misconduct by Mr. Wallace**

30.    It would be impossible to fully present the history of litigation caused by Stephen Paul Wallace regarding the administration of the Wallace family trusts.  [Milton Declaration, ¶ 66.]  Nonetheless, it is important to point out that Mr. Wallace's litigation conduct has caused the U.S. District Court for the Northern District of Oklahoma to enter filing restrictions as the only available means to bring his litigation misconduct under control.  [Milton Declaration,

¶ 66.] On June 17, 2004, the U.S. District Court for the Northern District of Oklahoma entered a sanctions order against Mr. Wallace that, among other things, imposed filing restrictions upon him for the purpose of preventing "the further filing of frivolous or malicious actions by Wallace." [Milton Declaration, ¶ 66; *id.* at Ex. "21".] On December 21, 2004, the U.S. District Court for the Northern District entered a General Order and established a miscellaneous docket number for the purpose of administering the filing restrictions against Mr. Wallace. [Milton Declaration, ¶ 66; *id.* at Ex. "22".] On April 11, 2005, the U.S. District Court for the Northern District of Oklahoma expanded the filing restrictions "to apply to any case filed in any court and subsequently transferred to the Northern District of Oklahoma." [Milton Declaration, ¶ 66; *id.* at Ex. "23".] The filing restrictions were further clarified by an Order entered on July 15, 2005. [Milton Declaration, ¶ 65; *id.* at Ex. "24".]

31.     Similar filing restrictions were entered against Mr. Wallace in the U.S. Bankruptcy Court for the Northern District of Oklahoma. *In re Wallace*, 288 B.R. 139, 148-49 (Bankr. N.D. Okla. 2002). [Milton Declaration, ¶ 67.]

32.     Despite these filing restrictions, Mr. Wallace has continued to attempt to use the federal courts as a means of disrupting the Oklahoma state-court trust litigation. [Milton Declaration, ¶ 68.] For example, on August 6, 2004, Mr. Wallace filed a notice of removal in S.D. Tex. Case No. 4:04-CV-03131, attempting removal of Tulsa County Case No. PT-2003-46, a related action for supervision and instructions regarding a related Wallace family trust. [Milton Declaration, ¶ 68.] On November 19, 2004, the U.S. District Court for the Southern District of Texas entered an Order finding that the action had not been removed to a federal district within which the removed action was pending pursuant to 28 U.S.C. § 1446(a), finding a lack of

removal jurisdiction, and remanding the action to the District Court of Tulsa County.  [Milton Declaration, ¶ 68; *id.* at Ex. "25".]

33.     Similarly, On October 12, 2004, Mr. Wallace filed a notice of removal in the U.S. District Court for the District of Columbia, initiating Case No. 1:04-CV-01730-RWR.  [Milton Declaration, ¶ 69; *id.* at Ex. "26".]  The October 12, 2004 notice of removal attempted removal of Tulsa County Case No. PT-2002-56.  [Milton Declaration, ¶ 67; *id.* at Ex. "26".]  On November 9, 2004, U.S. District Judge Richard W. Roberts entered an Order finding that "Wallace may not remove a civil action filed in Oklahoma to the United States District Court for the District of Columbia."  [Milton Declaration, ¶ 69; *id.* at Ex. "27".]  On this basis, the Court denied leave to file the October 12, 2004 notice of removal and administratively closed Case No. 1:04-CV-01730-RWR.  [Milton Declaration, ¶ 69; *id.* at Ex. "27".]

34.     On November 17, 2004, Mr. Wallace filed a notice of removal in S.D. Tex. Case No. H-04-4403, attempting removal of Tulsa County Case No. PT-2002-56.  [Milton Declaration, ¶ 70; *id.* at Ex. "28".]  On November 23, 2004, U.S. District Judge Nancy F. Atlas entered an Order striking the notice of removal as ineffective and dismissing the action as improperly removed.  [Milton Declaration, ¶ 70; *id.* at Ex. "29".]

35.     There are currently three actions pending in the U.S. District Court for the District of Columbia, filed by Mr. Wallace.  These actions appear to be hybrids between (1) notices of removal and (2) complaints asserting new claims against the trustees, their attorneys, and various state-court judges.  [Milton Declaration, ¶ 69; *id.* at Ex. "5"; Exhibit "30"; Exhibit "31".]

## ARGUMENT AND AUTHORITY

## I.     <u>Plaintiff's claims should be dismissed because of Improper Venue</u>

This Court presents an improper venue for the assertion of Mr. Wallace's claims and thus this Court should dismiss this action.

Venue is proper only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

Thus, venue in this case is only proper in a judicial district in Oklahoma. All the defendants in this action reside in Oklahoma. Moreover, the underlying state case involves trusts being administered by co-trustees located in Tulsa, Oklahoma. All the property contained in those trusts is located in Oklahoma. No event related to these trusts has occurred in the District of Columbia, except Mr. Wallace's baseless attempts to institute litigation in this Court and to remove cases currently pending in Oklahoma state court to this district. Accordingly, venue is proper only in Oklahoma and this action should be dismissed.

## II.    Moving Defendants are not subject to personal jurisdiction in the U.S. District Court for the District of Columbia.

Moving Defendants also move to dismiss this action for this Court's lack of personal jurisdiction over the Defendants, pursuant to Federal Rule of Civil Procedure 12(b)(2). Defendants are all residents of Oklahoma and have no contacts with the District of Columbia sufficient for the exercise of personal jurisdiction. Neither RICO or a civil rights action would grant the U.S. District Court for the District of Columbia personal jurisdiction over Defendants.

### A.    RICO and Section 1983 do not confer personal jurisdiction upon moving Defendants.

Personal jurisdiction under the "national contacts" doctrine followed by some courts in civil RICO claims is not available in the District of Columbia. This Court explicitly rejected the national contacts doctrine in *World Wide Minerals Ltd. v. Republic of Kazakhstahn*, 116

F.Supp.2d 98, 108 (D.D.C. 2000), *aff'd and remanded on other grounds*, 296 F.3d 1154 (D.C. Cir. 2002). In rejecting the "national contacts" doctrine this Court noted allowing personal jurisdiction under the nationwide service of process section of the RICO statute would invalidate the decisions made in the previous sections which allow for personal jurisdiction where any one defendant may reside and nationwide jurisdiction over other parties not residing in the district. *Id*. This Court "rejects the notion that the federal RICO statute would provide a basis for nation wide jurisdiction." *Id*. Failure to allege that a civil RICO defendant transacts business in the District of Columbia warrants a dismissal for lack of personal jurisdiction to those defendants. *Moore v. Motz*, 437 F.Supp.2d 88, 93 (D.D.C. 2006).

In addition, 42 U.S.C. § 1983 does not provide a statutory basis for personal jurisdiction in the District of Columbia in this action. Therefore, Plaintiff must rely upon a minimum contacts analysis to determine if personal jurisdiction exists over these defendants.

**B.**    **The U.S. District Court for the District of Columbia does not have personal jurisdiction over Defendants.**

Absent statutory personal jurisdiction from RICO or Section 1983 in the District of Columbia, for personal jurisdiction to exist, the defendant must have purposefully established sufficient minimum contacts such that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." *FC Inv. Group LC v. Lichtenstein*, 441 F. Supp. 2d 3, 8 (D.D.C. 2006) (quoting *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004)). Moreover, the plaintiff bears the burden of establishing "a factual basis for the Court's exercise of personal jurisdiction over Defendants." *FC Inv. Group*, 441 F. Supp. 2d at 8. To subject themselves to personal jurisdiction in the District of Columbia, Defendants must have purposefully directed their activities toward a resident of the District of Columbia. *Id*. at 9. Even when subject matter jurisdiction is predicated on federal question, plaintiffs must rely on the D.C. long-arm statute to

assert personal jurisdiction over out-of-district defendants. *Edmond v. United States Postal Serv. Gen. Counsel,* 949 F.2d 415, 424 (D.C.Cir.1991). The D.C. long-arm statute provides for personal jurisdiction over defendants who transact business in the District or those who tortiously cause injury there. D.C. CODE ANN. § 13-423(a)(1), (3), (4).

In *Wichita Federal Savings & Loan Association v. Landmark Group*, 657 F. Supp. 1182 (D. Kan. 1987), the court found in a civil RICO case that the Supreme Court would require, as a consequence of the defendant's due process rights, that the defendant have some minimum contacts with the forum district. *Wichita*, 657 F. Supp. at 1194. In conducting a minimum contacts analysis, the court considered the following factors: (1) the burden imposed upon defendant by litigation in the forum state; (2) defendant's reasonable expectations and the foreseeability of litigation in the forum state; (3) plaintiff's interest in convenient and effective relief; (4) the federal judicial system's interest in efficiently resolving controversies; and (5) the forum state's interest in having a court, within the forum state, adjudicate the dispute. *Id.*

All five factors weigh against personal jurisdiction over moving Defendants. As shown in the factual statement above, the administration of the trusts takes place in Oklahoma. The Defendants have no contact with the District of Columbia other than answering litigation here. Because they are residents of Oklahoma, and because the administration of the trusts takes place in Oklahoma, it would be a great burden on the Defendants to litigate this matter in the U.S. District Court for the District of Columbia. Because the Defendants have had no contacts with the District of Columbia, there would be no reason for either of them to expect that they would be named as defendants in a lawsuit filed in the District of Columbia. Further, Mr. Wallace cannot show an interest in litigating this matter in the District of Columbia, other than his intentions of causing harassment of the trustees and delay and disruption of the administration of

the trusts.  Mr. Wallace is currently litigating a claim that he filed in the District Court of Tulsa County, thus demonstrating that litigating this matter in Oklahoma would be more convenient for Mr. Wallace, who is a resident of Oklahoma.  For these reasons, the District of Columbia has no interest in this matter, as almost every party is a resident of Oklahoma, and the alleged activities giving rise to this litigation occurred in Oklahoma.

### C.    Claims against a non-legal entity by Mr. Wallace are inappropriate and must be dismissed by this Court.

Mr. Wallace's claims against the Estate are inappropriate because the Estate has not been admitted to probate, and no personal representative has been appointed to represent it. Generally, claims against a decedent's estate under Oklahoma law can only be maintained by first being presented to and allowed by the personal representative.  Okla. Stat. tit. 58, §§ 333, 341 (2001); *see State ex rel. Otjen v. Mayhue*, 476 P.2d 317, 318 (Okla. 1970).  This is because the personal representative acts on behalf of the estate, and he/she is the proper person to represent the estate in suits brought by or against it.  *In re Kelly's Estate*, 269 P. 282, 284 (Okla. 1928); *see Brocker v. Stallard*, 126 P. 781 (Okla. 1912) (holding that where one seeks a personal judgment against a decedent's estate, the personal representative must be joined since the rights of general creditors are affected).

Indeed, probate generally does not contemplate suits by third parties against a decedent's estate prior to the appointment of a personal representative.  For example, a vacancy in the personal representative position tolls the statute of limitations for creditors to file claims against a decedent's estate.  Okla. Stat. tit. 58, § 343 (2001).  Where probate proceedings have not been commenced, the burden is on the creditor to seek his own appointment as personal representative before pursuing claims against the decedent's estate.  Okla. Stat. tit. 58, § 122; *see Matter of*

*Carlin's Estate*, 572 P.2d 606 (Okla. Civ. App. 1977).  For the above reasons, dismissal of Mr.

Wallace's claims against the Estate of Paul Mindeman, a legal non-entity, is required.

**III.    This Court lacks subject matter jurisdiction over the claims asserted by the Plaintiff.**

    **A.    The claims set forth in the "Notice of Removal and Complaint" and the "Amended Complaint" are barred by the Rooker-Feldman doctrine.**

Under the *Rooker-Feldman* doctrine, lower federal courts lack jurisdiction to hear claims

that are either (1) actually decided by a state court or (2) "inextricably intertwined" with a prior

state court judgment.  *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *District of

Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 n. 16 (1983).  The *Rooker-Feldman*

doctrine flows from the general rule that only the United States Supreme Court has federal

appellate authority to review state court decisions.  *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*,

363 F.3d 1072, 1074-75 (10th Cir. 2004).  The doctrine prevents a lower federal court from

conducting "what in substance would be appellate review of [a] state judgment . . . based on a

losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v.

De Grandy*, 512 U.S. 997, 1005-06 (1994), *quoted in Kenmen Eng'g v. City of Union*, 314 F.3d

468, 473 (10th Cir. 2002).  The question of whether claims are "inextricably intertwined" for

purposes of the *Rooker-Feldman* doctrine rests on "whether the state-court judgment caused,

actually and proximately, the injury for which [the federal-court plaintiff] seeks redress."

*Kenmen*, 314 F.3d at 476.

Here, Mr. Wallace's claims depend upon a determination of facts that would be directly

contrary to the Final Order Regarding Forfeiture entered in Tulsa County Case No. PT-2002-56

an on-going action to administer the Wallace Family Trusts.  More specifically, Mr. Wallace

urges in his Complaint that "several million dollars found it way into the pockets of Milton, Poe,

and Saffa as if the Lorice T. Wallace Revocable Trust dated December 26, 1974 was their personal retirement plan." [Complaint, Doc. 1, a ¶ 2]. These allegations are an attempt to appeal the Court's Final Order of Forfeiture issued on October 26, 2006 in Tulsa County Case PT-2002-56.  These allegations cannot constitute a conspiracy but are an impermissible collateral attack upon a state court final order.

Similarly, Mr. Wallace's claims of ongoing fraud in the administration of the Wallace Family Trusts would be subsumed into and resolved by the Journal Entry of Final Judgment in Tulsa County Case PT-2002-21 to the extent that the claims pre-dated the trial in that matter.

Each of these challenges is barred by the *Rooker-Feldman* doctrine.  Because all of Mr. Wallace's claims against the trustees are inextricably intertwined with the challenged judgments, all of his claims are barred by the *Rooker-Feldman* doctrine.

The moving Defendants respectfully suggest to the Court that the *Rooker-Feldman* doctrine, alone, is sufficient to warrant a dismissal of the Complaint on the basis of Fed. R. Civ. P. 12(b)(1), which provides for dismissal for lack of subject-matter jurisdiction.  "The *Rooker-Feldman* doctrine is a jurisdictional prohibition."  *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 479 (10th Cir. 2002); *Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 705 (10th Cir. 2004) (quoting *Kenmen*).

**B.    The U.S. District Court should abstain from addressing the claims set forth in Mr. Wallace's Amended Complaint because such claims, if not resolved by prior state-court judgments, are within the current and active jurisdiction of the Oklahoma state courts.**

Considerations of judicial economy and comprehensive disposition of litigation would suggest that the U.S. District Court should decline to exercise its jurisdiction in deference to pending state court proceedings.  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-19 (1976); *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325,

327 (2nd Cir. 1986) (citing *Colorado River*, 824 U.S. at 818, and *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 23-27 (1983)).  Here, the LTW Revocable Trust and the LTW Irrevocable Trust are before the District Court of Tulsa County in Case No. PT-2002-56, pursuant to state law granting the state court jurisdiction to supervise the administration of trusts.  Okla. Stat. tit. 60, § 175.23.

It has long been the rule in federal courts that "if . . . two suits are *in rem*, or quasi *in rem*, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other."  *Princess Lida of Thurn v. Thompson*, 305 U.S. 456, 466 (1939).  This general principle was again recognized by the U.S. Supreme Court in 2006.  *Marshall v. Marshall*, 126 S. Ct. 1735, 1748 (2006) (enunciating the general principle that "when one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res").  Applying this rule to the intersection between federal-court bankruptcy jurisdiction and state-court probate jurisdiction, the *Marshall* Court held that, "[t]hus, the probate exception reserves to state probate courts the probate or annulment of a will *and the administration of a decedent's estate*; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction."  *Marshall*, 176 S. Ct. at 1748 (emphasis added).  *See also Wilbur v. KeyBank N.A.*, 962 F. Supp. 1122, 1134 (N.D. Ind. 1997) (granting motion for abstention where the state court had assumed jurisdiction over the assets of the income beneficiary's estate); *Lawrence v. Cohn*, 778 F. Supp. 678, 685-86 (S.D.N.Y. 1991) (dismissing the complaint on the basis of abstention where the state court had accepted jurisdiction over the res represented by the

estate), *vacated on other grounds*, 816 F. Supp. 191 (S.D.N.Y. 1993). The moving Defendants request dismissal on this basis pursuant to Fed. R. Civ. P. 12(b)(1).

IV. **Plaintiff's "Notice of Removal" and "Amended Complaint" should be dismissed for failure to state a claim upon which relief can be granted**

Defendants move to dismiss both Mr. Wallace's claim under Section 1983 and his claim under Section 1964 for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

A. **This Court should dismiss Plaintiff's Section 1983 claim for failure to state a claim upon which relief can be granted as moving Defendants are not state actors and are not acting under color of law.**

Mr. Wallace cannot pursue a Section 1983 claim against Defendants. Mr. Wallace's allegations, such as they are, state that Defendant's colluded "to assert 'anti-Semetic' discrimination upon Respondents and to criminally convert Respondents $30 million Estate for their sole use and benefit." [Amended Complaint, Doc. No. 31, at p. 1]. Even if the allegations are true, Mr. Wallace cannot state a civil rights claim because Defendants are all private individuals or entities and are not government actors. It is clear that a Section 1983 action cannot be maintained against private parties. *Hoai v. Vo*, 935 F.2d 308, 314 (D.C. Cir. 1991). Mr. Wallace's Notice of Removal and Complaint and Amended Complaint makes no allegation that Defendants are government actors. In fact, Mr. Wallace's allegations center around Defendants request for instructions for the court regarding the administration of the Wallace family trusts, and it is well established that a private party cannot be subjected to liability under Section 1983 because of "mere recourse to state or local court procedures." *Id*. at 313. Moreover, "[a]n attorney does not act under color of law in her or his capacity as representative of a client in court." *Id*. at 313 n.5. Mr. Wallace's "complete failure to allege facts that would support a finding of action under color of law . . . affords valid grounds for dismissal of a section 1983

claim." *Id.* at 314. Accordingly, this Court should dismiss Mr. Wallace's Section 1983 claim with prejudice.

Even a liberal reading of the pleadings as required for pro se plaintiff's establishes that there are no facts upon which relief can be granted in this case. *Williams v. Holiday Inn Washington, D.C.*, 295 F.Supp.2d 27, 29 (D.D.C. 2003). It is not a civil rights violation for an attorney and trustees of a trust to request instructions regarding a trust because they do not act under color of law. *See Hoai*, 935 F.2d at 313 n.5. When there is no legal basis for a complaint, it should be dismissed to avoid wasting judicial resources. *See Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 715 (D.C. Cir. 1990).

**B.    The Plaintiff's RICO claim should be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).**

Mr. Wallace cannot pursue a Section 1964 claim against Defendants. Section 1964 is the civil remedies provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. § 1964. To succeed on his RICO claim, Mr. Wallace must plead and prove four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *W. Assocs. Ltd. P'ship, v. Market Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001). Plaintiff's "Notice of Removal and Complaint" and "Amended Complaint" fail to allege facts sufficient to establish the elements of a RICO claim.

**1.    The Plaintiff's allegations, even if true, cannot prove the existence of an enterprise for the purposes of RICO.**

Mr. Wallace cannot prove that were was an "enterprise" or a conspiracy as required by the RICO statutes.  Mr. Wallace asserts, without authority, that the Defendants, "are an association in fact affecting interstate commerce." [Complaint, Doc. No. 1, p. 4]. A RICO enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18

U.S.C. § 1961(4). In applying this definition a showing of a  common purpose, organization distinct structure apart from the alleged racketeering, and continuity. *U.S. v. White*, 116 F.3d 903, 924 (D.C. Cir. 1997) *quoting U.S. v. Perholtz*, 842 F.2d 343, 362 (D.C. Cir. 1988). Mr. Wallace has not alleged organization or contact between the Defendants to show any kind of permanent structure apart from the alleged violations.

### 2.    The Plaintiff fails to allege at least two acts of racketeering to establish a pattern of racketeering.

The RICO statute requires that a pattern of racketeering is to be proven by at least two acts of racketeering. 18 U.S.C. § 1961(5).  The "Notice of Removal and Complaint" appears to allege only one RICO act – that of petitioning Judge Frizzell "to exclude Stephen P. Wallace and Mary Roma Jage as beneficiaries of the Lorice T. Wallace Revocable Trust." [Complaint, Doc. No. 1, p. 1]. Assuming that the filing and granting of a motion of forfeiture in an action for instructions in the administration of a trust is a RICO act, which Defendants do not, then there is still only one act alleged by Plaintiff.  In determining whether a claim can survive a motion to dismiss, the court should determine whether the plaintiff has alleged a pattern of racketeering activity, in light of the following factors: "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *Id.* (quoting *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir.1995)). Moreover, "if a plaintiff alleges only a single scheme, a single injury, and only a few victims it is 'virtually impossible for plaintiffs to state a RICO claim.'" *Id.* at 634 (quoting *Edmondson*, 48 F.3d at 1265).

### 3.    Plaintiff's allegations as stated do not rise to the level of a RICO claim.

The federal RICO statute clearly defines categories of crimes that may constitute RICO violations if the other elements of RICO are met.  The statutory definition does not include

fraudulent conduct or embezzlement in the administration of a family trust. 18 U.S.C. § 1961(1).

RICO does not include general civil wrongs for which there are adequate remedies in state law.

As to whether civil wrongs may constitute RICO predicates, the U.S. Court of Appeals for the

Third Circuit has ruled:

> We would have thought the answer to this question obvious, but, as evidenced by the case at bar, the question begs for definitive resolution. Accordingly, we take this opportunity to make clear that a plaintiff in a civil RICO action cannot rely on a breach of contract, tortious interference with contract, or the Pennsylvania state law crime of theft by deception as predicate acts of racketeering activity under the federal RICO statute.

*Annulli v. Panikkar*, 200 F.3d 189, 192 (3rd Cir. 1999) (partially abrogated on other grounds by

*Rotella v. Wood,* 528 U.S. 549 (2000)).

Further, the legitimate conduct of administering a trust cannot be considered predicate

acts for RICO purposes. *See D'Orange v. Feely*, 877 F.Supp. 152 (S.D. N.Y. 1995) (holding that

legitimate conduct of attorneys acting on behalf of a client cannot be a RICO predicate).

Mr. Wallace's allegations fail to live up to the requirements specified in *Western*

*Associates* and *Edmondson*. Mr. Wallace has alleged that Defendants "are engaged in a series of

fraud schemes," but has failed to plead his allegations of fraud with specificity as required by

Federal Rule of Civil Procedure 9(b). [Complaint, Doc. 1 at 4]. He has failed to identify the

nature of the scheme or the length of time over which the scheme allegedly occurred. He has

alleged only one victim, himself. In addition, he has failed to allege the character of the unlawful

activity allegedly committed by Defendants. Further, to recover for under 18 U.S.C. § 1962(a)

Mr. Wallace "must plead and prove that his injury flowed from the defendant's *use or investment*

of racketeering income. It is not sufficient to allege injury flowing from the predicate acts of

racketeering." *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1229 (D.C.

Cir. 1991). Mr. Wallace has failed to plead any specifics about his alleged injury, and has

certainly not alleged any facts that would indicate the nature of his injury. Accordingly, dismissal of Mr. Wallace's RICO claim with prejudice is proper.

**V.    Pursuant to 28 U.S.C. § 1367(c)(3), the U.S. District Court for the District of Columbia should decline to exercise supplemental jurisdiction over the Plaintiffs' state-law claims.**

Assuming for a moment that the Mr. Wallace's RICO and Section 1983 claims are dismissed, there would exist no basis for federal subject-matter jurisdiction under 28 U.S.C. § 1331. Further, diversity jurisdiction under 28 U.S.C. § 1332 would be absent because complete diversity is lacking here. The Plaintiff and Defendants are residents of Oklahoma. As a result, if the Court were to dismiss the Mr. Wallace's RICO and civil rights claims, the U.S. District Court would have discretion to dismiss the Plaintiffs' remaining state-law claims under 28 U.S.C. § 1367(c)(3).

**VI.    Conclusion**

For the foregoing reasons, this action should be dismissed, with prejudice and Defendants should be awarded their reasonable costs and expenses, including attorney fees, incurred in defending this action.

                                        THE TRUST COMPANY OF OKLAHOMA,
                                        RONALD J. SAFFA, JAMES E. POE, JAMES C.
                                        MILTON, REECE MORREL, ADAM ADWON,
                                        G. REUBEN DAVIS, WILLIAM GRIMM,
                                        KENNETH CRUMP, JOHN WOOLMAN, "THE
                                        PAUL MINDEMAN ESTATE," EDWARD
                                        KALLAY, THE KALLAY GROUP, LLC., and
                                        CDSG 1, LLC incorrectly identified by Mr. Wallace
                                        as CDSGA, LLC.
                                        By Counsel

LECLAIR RYAN, A Professional Corporation

By:    _____/s/_____

Jennifer L. Sarvadi  (D.C. Bar No. 490475)
225 Reinekers Lane, Suite 700
Alexandria, VA 22314
703-684-8007
703-684-8075 (facsimile)


## VII.    **CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of January, 2007, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Trevor Washington Swett, III
James P. Wehner
Pamela Anne Bresnahan

I hereby certify that on this 31st day of January, 2007, a true and correct copy of the foregoing was sent by first-class, postage-prepaid, U.S. mail to:

Stephen E. Wallace
6528 E. 101st Street, D-1 #304
Tulsa, Oklahoma  74133
*Pro Se*

Patricia Wallace Hastings
2934 E. 73rd Pl.
Tulsa, Oklahoma  74136

Joan Godlove, Esq.
2121 S. Columbia, Suite 500
Tulsa, OK 74114-3519

_____/s/_____
Counsel

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: the Lorice T. Wallace Revocable Trust dated December 26, 1974, as restated effective October 5, 1993 and as amended on February 12, 1998, the Lorice T. Wallace Irrevocable Trust dated February 8, 1996, and the Lorice T. Wallace Irrevocable Trust dated September 11, 1992, also known as the Lorice T. Wallace Life Insurance Trust, and the Lisa Frances Wallace Discretionary Spendthrift Trust. | D.C. Case No. 1:06CV01817<br>Judge Reggie B. Walton<br><br>Removed from:<br>District Court of Tulsa County,<br>State of Oklahoma,<br>Case No. PT-2002-56 |

### NOTICE REGARDING EXHIBITS

The exhibits attached to the Motion to Dismiss filed by Defendants The Trust Company of Oklahoma, Ronald J. Saffa, James E. Poe, James C. Milton, Reece Morrel, Adam Adwon, G. Reuben Davis, William Grimm, Kenneth Crump, John Woolman, "the Paul Mindeman Estate," Edward Kallay, The Kallay Group, LLC, and CDSG 1, LLC incorrectly identified by Mr. Wallace as CDSGA, LLC, are in paper form only and are being maintained in the case file in the Clerk's Office. These documents will be available for public viewing and copying between the hours of 9:00 a.m. to 4:00 p.m., Monday through Friday.

LECLAIR RYAN, A Professional Corporation

By:    _____/s/_____

Jennifer L. Sarvadi  (D.C. Bar No. 490475)
225 Reinekers Lane, Suite 700
Alexandria, VA 22314
703-684-8007
703-684-8075 (facsimile)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: the Lorice T. Wallace Revocable Trust | ) | |
| dated December 26, 1974, as restated | ) | |
| effective October 5, 1993 and as amended on | ) | |
| February 12, 1998, the Lorice T. Wallace | ) | D.C. Case No. 1:06CV01817 |
| Irrevocable Trust dated February 8, 1996, and | ) | Judge Reggie B. Walton |
| the Lorice T. Wallace Irrevocable Trust dated | ) | |
| September 11, 1992, also known as the Lorice | ) | Removed from: |
| T. Wallace Life Insurance Trust, and the Lisa | ) | District Court of Tulsa County, |
| Frances Wallace Discretionary Spendthrift | ) | State of Oklahoma, |
| Trust. | ) | Case No. PT-2002-56 |

**ORDER**

Before the Court is the Combined Motion to Dismiss filed on January 31, 2007 by the

Defendants The Trust Company of Oklahoma ("Trust Company"), Ronald J. Saffa, James E.

Poe, James C. Milton, Reece Morrel, Adam Adwon, G. Reuben Davis, William Grimm, Kenneth

Crump, John Woolman, "the Paul Mindeman Estate," Edward Kallay, The Kallay Group, LLC,

and CDSG 1, LLC incorrectly identified by Mr. Wallace as CDSGA, LLC (hereinafter the

"Moving Defendants").  Having reviewed the motion and materials submitted by the parties, the

Court finds that the Combined Motion to Dismiss should be granted.

Accordingly, IT IS THEREFORE ORDERED that all claims within the Notice of

Removal and Complaint and Amended Complaint filed by Plaintiff Stephen P. Wallace are

hereby dismissed.

Further, to the extent that this action is an attempted removal of a state action in Tulsa

County District Court case PT-2002-56, such attempted removal is stricken as unauthorized and,

to the extent necessary for clarity of the record, the case is hereby remanded to the Tulsa County

District Court.

Dated this _____ day of _____, 2007.


_____
Hon. Reggie B. Walton
United States District Judge

Service copies to be provided to:

Jennifer L. Sarvadi  (D.C. Bar No. 490475)
LeClair Ryan, P.C.
225 Reinekers Lane, Suite 700
Alexandria, VA 22314
703-684-8007
703-684-8075 (facsimile)
Counsel of record for Defendants,
THE TRUST COMPANY OF OKLAHOMA, RONALD J. SAFFA, JAMES E. POE, JAMES C.
MILTON, REECE MORREL, ADAM ADWON, G. REUBEN DAVIS, WILLIAM GRIMM,
KENNETH CRUMP, JOHN WOOLMAN, "THE PAUL MINDEMAN ESTATE," EDWARD
KALLAY, THE KALLAY GROUP, LLC., and CDSG 1, LLC

Trevor Washington Swett, III
CAPLIN & DRYSDALE
One Thomas Circle, NW
Washington, DC 20005
(202) 862-5000

James P. Wehner
Caplin & Drysdale, Chartered
One Thomas Circle, NW
Suite 1100
Washington, DC 20005
(202) 862-5075
Fax: (202) 429-3301

Pamela Anne Bresnahan
VORYS, SATER, SEYMOUR AND PEASE LLP
1828 L Street, NW  Eleventh Floor
Washington, DC 20036-5109
(202) 467-8861
Fax: (202) 467-8900

Stephen P. Wallace
6528 E. 101st Street, D-1 #304
Tulsa, Oklahoma 74133
Pro se Plaintiff

Patricia Wallace Hastings
2934 E. 73rd Pl.
Tulsa, Oklahoma  74136

Joan Godlove, Esq.
2121 S. Columbia, Suite 500
Tulsa, OK 74114-3519